**Richard WILSON and Mary Wilson, Plaintiffs,**

v.

**WAVERLEE HOMES, INC., etc., Defendant.**

**Douglas R. WOODALL and Elizabeth J. Woodall, Plaintiffs,**

v.

**WAVERLEE HOMES, INC., etc., Defendant.**

**Civil Action Nos. 96–T–1017–N, 96–T–1018–N.**

United States District Court, M.D. Alabama, Northern Division.

Feb. 4, 1997.

G. Houston Howard, II, Howard, Dunn, Howard & Howard, Wetumpka, AL, for Plaintiffs in Nos. 96–CV–1017 and 96–CV–1018.

Patrick C. Davidson, Walker, Hill, Adams, Umbach, Meadows & Walton, Opelika, AL, Robert E. Sasser, Clifton E. Slaten, James D. McLaughlin, Sasser & Littleton, P.C., Montgomery, AL, for Defendants in Nos. 96–CV–1017 and 96–CV–1018.

### ORDER

MYRON H. THOMPSON, Chief Judge.

Plaintiffs Richard and Mary Wilson and Douglas and Elizabeth Woodall originally filed these two lawsuits in the Circuit Court of Elmore County, Alabama, against defendant Waverlee Homes, Inc., on a variety of theories based in tort, and for breaches of implied and express warranties, including violation of the Magnuson–Moss Warranty–Trade Commission Improvement Act (Magnuson–Moss Act), 15 U.S.C.A. §§ 2301–2312. These claims all stem from the plaintiffs' purchases of mobile homes manufactured by Waverlee and sold by Hart's Mobile Home Sales, Inc., which is not a party to these lawsuits. Waverlee removed these lawsuits from state to federal court based on the federal courts' concurrent original jurisdiction under the Magnuson–Moss Act, 15 U.S.C.A. § 2310(d), 28 U.S.C.A. § 1441(a), and the federal courts' discretionary jurisdiction over related state-law claims upon removal. 28 U.S.C.A. § 1441(c). Pending before the court are motions by Waverlee to compel binding or final arbitration pursuant to the Federal Arbitration Act (FAA), as amended, 9 U.S.C.A. §§ 1–16, and to stay judicial proceedings pending the court's ruling on the issue of arbitration. For the reasons that follow, the motions will be denied.

## I. BACKGROUND

In 1995, the Wilsons and the Woodalls purchased mobile homes from Hart's Mobile Home. The mobile homes had been manufactured by Waverlee. According to the plaintiffs, Waverlee provided an express written warranty that the homes would be free of substantial defects in materials and workmanship for a period of one year and that Waverlee would repair or replace any such defects occurring during that period. The plaintiffs also contend that their homes are protected by a range of Alabama and federal consumer warranties, including implied warranties of merchantability, habitability, freedom from substantial defect, and so forth. The plaintiffs allege substantial manufacturing defects in the homes which have gone uncured or have been improperly repaired, and attach to their complaints 'partial' laundry lists of from 25 to 95 problems with the structures.

After removing these two lawsuits to this federal court, Waverlee in turn offered a litany of 47 defenses in its answers, the last of which became most pertinent upon its subsequent motions to compel arbitration and stay judicial proceedings. Although the seller of the mobile homes, Hart's Mobile Home, is not made a party to these lawsuits, Waverlee seeks in this last line of defense to shelter itself from a rain of litigation under the canopy of a clause for binding or final arbitration in the installment sales and financing contracts between Hart's Mobile Home and the plaintiffs, governed by the FAA.[1]

---

1. The arbitration clause in the installment sales and financing contract the Wilsons had with Hart's Mobile Home and a separate financing institution is in part as follows:

"Dispute Resolution. Any controversy or claim between or among you and I or our assignees arising out of or relating to this contract or any agreements or instruments relating to or delivered in connection with this contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single

## II. DISCUSSION

The main question to be decided in these cases is whether a warrantor who is a nonsignatory to a commercial installment sales and financing contract containing an arbitration clause may use contract principles, such as equitable estoppel, to apply the FAA and so compel buyers complaining of breach of warranty to arbitrate their claims.

### a. The FAA and Contract Law

■■■ The FAA states that:

"A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 1255–56, 103 L.Ed.2d 488 (1989). "Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their agreements as they see fit." *Id.* It is a cardinal principle of federal arbitration law that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navig. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Thus, initially, Waverlee must show that the plaintiffs, when purchasing their homes under the installment sales and financing contracts with Hart's Mobile Home that make no mention of Waverlee, nonetheless constructively, or as a matter of law, agreed to arbitrate any dispute that might arise with Waverlee under express and applicable warranties.

■■■ It is the court's task, unless the parties have explicitly agreed otherwise, to determine whether an agreement to arbitrate exists between parties. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, ——, 115 S.Ct. 1920, 1923–25, 131 L.Ed.2d 985 (1995). In making this determination, the court should apply ordinary state common law governing the formation of contracts, with due regard for the federal policy favoring arbitration. *Volt Info. Sciences,* 489 U.S. at 475–76, 109 S.Ct. at 1254; *see also Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, —— & n. 9, 115 S.Ct. 1212, 1219 & n. 9, 131 L.Ed.2d 76 (1995). However, only state laws that are applicable to contracts generally may be applied to arbitration agreements; a state law that singles out arbitration agreements for disfavored treatment is displaced by the FAA. *Doctor's Assocs., Inc. v. Casarotto,* —— U.S. ——, ——, 116 S.Ct. 1652, 1655–56, 134 L.Ed.2d 902 (1996); *see also Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, ——, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995) (states may regulate contracts, includ-

transaction, shall be determined by arbitration as described below.... The award of the arbitrator(s) shall be in writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 of the United States Arbitration Act or upon a finding of manifest injustice."
And the arbitration clause in a similar contract the Woodalls had with Hart's Mobile Home and a another financing institution is in part as follows:
"ARBITRATION: All disputes, claims or controversies arising from or relating to this Contract or the parties thereto shall be resolved by

binding arbitration by one arbitrator selected by you with my consent. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes.... The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Contract. The parties agree that the arbitrator shall have all powers provided by law, the Contract and the agreement of the parties. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief...."

ing arbitration clauses, under general contract law principles, but may not single out arbitration clauses for disfavor); *First Options of Chicago,* —— U.S. at ——, 115 S.Ct. at 1924 (state law generally governs the determination of whether the parties agreed to arbitrate a certain matter).

■ It is almost axiomatic, as a first rule of state common law governing the formulation of contracts, that parties must manifest assent to a bargain in order to be bound under it. *See* Restatement (Second) of Contracts § 17. Hence, state law generally parallels the Supreme Court's observation in *AT & T Technologies* that " 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " 475 U.S. at 648, 106 S.Ct. at 1418 (quoting *Warrior & Gulf Navig. Co.,* 363 U.S. at 582, 80 S.Ct. at 1353). *See also Old Republic Ins. Co. v. Lanier,* 644 So.2d 1258, 1260 (Ala. 1994). Beyond that, also as a general matter, one "who is not a party to a contract has no standing to compel arbitration." *Britton v. Co-op. Banking Group,* 4 F.3d 742, 744 (9th Cir.1993); *Ex Parte Stallings & Sons, Inc.,* 670 So.2d 861, 862 (Ala.1995). But there are certain exceptions to such general propositions and statements.

■ First, parties to a contract may together agree, upon formation of their agreement, to confer certain benefits thereunder upon a third party, affording that third party rights of action against them under the contract. *Barber v. Business Products Center, Inc.,* 677 So.2d 223, 227 (Ala.1996). However, the party claiming to be a third-party beneficiary of a contract bears the burden of establishing that the contracting parties intended to bestow a benefit upon it. *Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co.,* 619 So.2d 1328 (Ala.1993).

■ The installment sales and financing contracts between the plaintiffs and Hart's Mobile Home make absolutely no reference to Waverlee. In fact, the arbitration clause in the Woodall contract says that *"the parties* agree and understand that *they* choose arbitration instead of litigation to resolve disputes" (emphasis added), and goes on to discuss the security agreement between the parties, while the one in the Wilson contract says "Any controversy or claim between or among you and I or our assignees ... shall, *if requested by either you or me,* be determined by arbitration." No stretch of the imagination would be adequate to encompass the concept that the parties to either contract contemplated disputes with non-parties relating to stated and implied warranties. Furthermore, the warranty provided by Waverlee neither contains an arbitration provision nor seeks to incorporate by reference the arbitration provisions in the installment sales and financing agreements between the plaintiffs and Hart's Mobile Home. Thus, the plaintiffs at no time and in no way agreed with Waverlee to waive their Magnuson–Moss Act rights, nor did they agree with Hart's Mobile Home to extend such a third-party benefit to Waverlee.

■ Other exceptions to the general proposition that a nonparty has no standing to compel arbitration are equally inapplicable to these cases. At the outset, one very important point that often gets neglected in any discussion of nonsignatories and arbitration clauses must be made clear: There are instances, and cases, where nonsignatories to arbitration clauses may be equitably compelled to pursue their claims against a defendant in arbitration. *See, e.g., In re Oil Spill by Amoco Cadiz,* 659 F.2d 789, 796 (7th Cir.1981) (plaintiff who invokes the doctrine of agency to gain standing to assert a claim against a defendant cannot later disavow an arbitration clause in the contract between its agent and the defendant); *Dunn Const. Co. v. Sugar Beach Condominium Ass'n,* 760 F.Supp. 1479 (S.D.Ala.1991) (party seeking status under contract as third-party beneficiary is estopped from later renouncing that status in order to prevent a party to the contract from compelling it to arbitrate a claim); and there are cases where, in general, ordinary contract and agency principles demand that nonsignatories be bound by arbitration clauses. *See Thomson–CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995) (presenting a list of common law contract and agency principles under which nonparties to arbitration clauses may be bound to arbitration agreements of

others, but distinguishing these from cases where nonparties seek to bind parties to contractual arbitration clauses); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110, 1121 (3rd Cir.1993) (principal and agent should both be bound to an arbitration agreement entered into by one of them when charges against both are based on the same facts and are inherently inseparable).

Here, however, there is no agency relationship between Waverlee and Hart's Mobile Home. In fact, the Waverlee warranty specifically disavows such a relationship. Nor is there corporate identity between them. In addition, the relevant issues are not already in arbitration between the parties to the agreements; nor are there allegations of joint misconduct by a party to the arbitration agreements and the nonparty.

In addition, the above reported cases, as *Thomson–CSF* points out, differ from ones where nonsignatories themselves seek standing to compel signatories to arbitrate claims with them. *See, e.g., J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 320–21 (4th Cir.1988) (charges against parent company based on same facts as claim against subsidiary, with whom arbitration agreement is in effect, may be referred to arbitration also); *Arnold v. Arnold Corp.,* 920 F.2d 1269, 1281 (6th Cir.1990) (nonsignatory defendant, as agent of signatory defendant, may compel arbitration); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.,* 741 F.2d 342 (11th Cir.1984) (equitable estoppel allows nonsignatory defendant to compel arbitration); *Sam Reisfeld & Son Import Company v. S.A. Eteco,* 530 F.2d 679, 681 (5th Cir.1976) (nonsignatory defendants could stay judicial proceedings where charges against [signatory and nonsignatory] defendants were based on the same operative facts and were inherently inseparable); *Britton,* 4 F.3d at 744; *A.L. Williams & Assoc., Inc. v. McMahon,* 697 F.Supp. 488, 494 (N.D.Ga.1988).

 In other words, the situation when a party seeks to compel a nonparty to arbitration differs from a situation where a nonparty is seeking to compel a party. In the former instance, the party already has rights under the arbitration clause and is seeking to enforce them more broadly. In the latter, the nonparty must first, as a threshold, establish grounds, in law or equity, why it should be permitted to assert rights under a contract to which it is NOT a party.

Waverlee places heavy reliance on the Eleventh Circuit Court of Appeals case, *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.,* to support the conclusion that, under the doctrine of equitable estoppel, it has standing to compel arbitration. *McBro* is a paradigmatic example of a case where equitable estoppel properly applies. There, a manager and a contractor each had a contract with a hospital to work on a construction project. Both contracts contained arbitration clauses. A dispute broke out between the contractor and the manager, who had no contract between them. The court ruled that the dispute had to be arbitrated because the duties the contractor claimed were breached by the manager were duties that arose under the contractor's contract with the hospital. The assignment of duties under that contract was the basis for the lawsuit; thus the other conditions of the contract applicable to disputes, including the arbitration clause, had also to be given effect. The claim at issue could not be adjudicated without interpreting and possibly enforcing the terms of that contract. The Eleventh Circuit stated that the dispute between the parties to the litigation was "intimately founded in and intertwined with the underlying contract obligations." *McBro,* 741 F.2d at 344 (quoting *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.,* 659 F.2d 836, 841 n. 9 (7th Cir.1981)).

The scenario presented to the Seventh Circuit Court of Appeals in *Hughes* was almost identical to that present in *McBro.* There, the court reasoned that "[Party A] is equitably estopped from asserting" that Party B "is not entitled to invoke the arbitration provision of the [Party A–Party C] agreement since it is not a party to that agreement" because "the very basis of [Party A's] claim against [Party B] is that [Party B] breached the duties assigned and ascribed to [it] by the agreement between [Party A] and [Party C]." *Hughes,* 659 F.2d at 838. *Cf. Mutual Ben. Life Ins. Co. v. Zimmerman,* 783

F.Supp. 853, 868 (D.N.J.1992) (tort claims against third party not intertwined with underlying contract so no estoppel grounds to compel arbitration).

The doctrine of equitable estoppel simply does not apply on the facts presented by the instant cases. Admittedly, as *McBro* demonstrates, equitable estoppel may apply where a party seeks, in some way, to benefit from an agreement without being in turn bound by it. Therefore, if the plaintiffs were alleging that the installment sales and financing contracts they had with Hart's Mobile Home imposed certain duties of performance upon Waverlee, they could not both assert the right to receive such performance from Waverlee under the contracts, and, at the same time, deny application of the arbitration clause governing disputes under those contracts. However, the plaintiffs brought their claims under a separate and distinct warranty agreement that contains no arbitration clause, and are thus not estopped from resisting Waverlee's efforts to compel them to submit their claims to arbitration. *See Hartford Accident & Indem. Co. v. Scarlett Harbor Assoc. Ltd. Partnership,* 109 Md.App. 217, 674 A.2d 106, 143, *cert. granted,* 343 Md. 334, 681 A.2d 70 (1996).

It is not enough that the defendant and the third party have common and parallel duties toward the plaintiff, and so could both be sued on the same theory of tort. Thus, it is not determinative that the plaintiffs here could have chosen to sue Hart's Mobile Home on some of the liability theories raised in their complaints, but did not. What matters is that none of the duties the plaintiffs are claiming that Waverlee breached arose under and were assigned to it by the sales agreements between the plaintiffs and Hart's Mobile Home, which are the sole agreements governed by an arbitration clause here. The warranty claims here are not intertwined with and founded upon the sales installment agreements, except in the utterly collateral sense that if the plaintiffs had never purchased their mobile homes, they would not have been protected by the warranties that came with them.

These cases are also unlike *Staples v. The Money Tree, Inc.,* 936 F.Supp. 856 (M.D.Ala. 1996) (Thompson, J.), where the plaintiff sued both Money Tree, the lender, and two insurers of the loan collateral, for scheming together to load her with unnecessary and excessive charges. The insurers sought to join in the lender's motion to compel arbitration under the terms of the loan agreement. The plaintiff's "claims against [the insurers were] derivative of, and predicated on, her claims against Money Tree; if she [had] no claim against Money Tree, she [had] no claim against [the insurers]." *Id.* at 859. This court therefore concluded that the plaintiff could be compelled to arbitrate the claims she had against the insurers because the claims against them were intimately founded on and intertwined with the underlying contractual obligations she had with the lender. Here, by contrast, even though the plaintiffs *could* have sued Hart's Mobile Home, they could also sue Waverlee independently and singly, without relying on any duties created under the contracts they had with Hart's Mobile Home. It was not anything in the installment sales and financing contracts that created the warranty rights the plaintiffs possess; it was only the *existence of* the contracts that did so.

The plaintiffs' cases are also distinguishable from the recent decision in *Roberson v. The Money Tree of Alabama, Inc.,* 954 F.Supp. 1519 (M.D.Ala.1997) (Thompson, J.). There, this court, relying on the doctrine of equitable estoppel, held that, although the defendant insurer was a nonsignatory to an arbitration agreement between the plaintiff borrowers and the co-defendant lender, the insurer could compel the borrowers to arbitrate their claims against the insurer. The court explained: "the [borrowers'] complaint alleges that some unidentified persons acted as agents of [lender] and the insurance companies in selling unnecessary insurance. The complaint is vague about whether [defendant insurer] is itself alleged to be the principal of [co-defendant lender], or vice versa. But the complaint also further alleges that all the defendants cooperated in a fraudulent scheme to sell them unnecessary insurance through various suppressions and misrepresentations. Thus, at least some of the claims against defendants were closely

intertwined and arose in connection with the loan agreement itself. The [borrowers'] theory that the defendants acted together to establish a scheme to fraudulently load unnecessary and expensive insurance policies onto high-interest consumer loan agreements gives rise to a set of complaints about their contract obligations that implicate all defendants inseparably. Thus, the claims against each defendant are 'intimately founded in and intertwined with the underlying contract obligations.' *McBro,* 741 F.2d at 344 (quoting *Hughes,* 659 F.2d at 841 n. 9)." 954 F.Supp. at 1528.

■ In summary, Waverlee, in its various legal briefs and responses to the plaintiffs' arguments, aside from *McBro* and a few factually similar equitable estoppel cases that don't apply here, has failed to cite a single authority challenging the assertion that "An entity that is neither a party to nor agent for nor beneficiary of the contract lacks standing to compel arbitration." *Britton,* 4 F.3d at 744. Because none of the exceptions discussed above applies, the court must conclude that Waverlee is not entitled to compel the plaintiffs to arbitrate their claims.

### b. *The Magnuson–Moss Act*

In 1974, Congress enacted the Magnuson–Moss Act "In order to improve the adequacy of information available to consumers, [and] prevent deception." 15 U.S.C.A. § 2302(a). It sets out clear and comprehensive requirements regarding disclosures, duties, and remedies associated with warranties on consumer products. Products covered by the Act include any "tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes." § 2301(1). Relying on the Magnuson–Moss Act, the plaintiffs submit, alternatively, that, because the installment sales and financing contracts between them and Hart's Mobile Home provide for *final* or *binding* arbitration, they could not be compelled to arbitrate their claims against Waverlee. The court agrees with the plaintiffs on this issue, which surprisingly appears to be one of first impression for the courts.

### 1.

■ The plaintiffs correctly observe that the language of the Magnuson–Moss Act, the regulations adopted pursuant to it, and its legislative history all confirm that Congress and the Federal Trade Commission intended that, with the exception of an informal and non-binding dispute resolution mechanism regulated and defined under the Act, consumers are to retain full and unfettered access to the courts for the resolution of their disputes.

■ *The Act.* The Magnuson–Moss Act indicates that Congress intended to preserve a judicial forum for consumers. The Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with an obligation under this title or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C.A. § 2310(d). The Act recognizes only one exception to this entitlement. The Act provides for the establishment of "informal dispute settlement mechanisms," § 2310(a)(1), or "informal dispute settlement procedures." § 2310(a)(3). The Act states that "[o]ne or more warrantors may establish an informal dispute settlement procedure," § 2310(a)(3); and that this procedure must comply with certain "minimum requirements" to be promulgated by the Federal Trade Commission. § 2310(a)(2). The Act further makes clear, however, that such dispute resolution procedures or mechanisms are non-binding on the consumer and must be resorted to *before* the consumer may resort to a legal remedy, that is, to court. In other words, the procedures are a prerequisite, not a bar, to relief in court. The Act provides that, if a warrantor "establishes such a procedure," § 2310(a)(3)(A), and if the procedure meets the Commission's rules, § 2310(a)(3)(B), and if the warrantor "incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy," § 2310(a)(3)(C), "then ... the consumer may not commence a civil action ... *unless* he initially resorts to such procedure." § 2310(a). Because the arbitration clauses contained in the installment sales and

financing contracts between the plaintiffs and Hart's Mobile Home are binding, rather than non-binding, and are thus a bar to court relief, they conflict with the Magnuson–Moss Act and are unenforceable.[2]

*The Act's Legislative History.* A review of the legislative history of the Magnuson–Moss Act reinforces this conclusion. The remarks of Congressman Moss, one of the sponsors of the bill, are particularly illuminating:

> "First, the bill provides the consumer with an economically feasible private right of action so that when a warrantor breaches his warranty or service contract obligations, the consumer can have effective redress. Reasonable attorney's fees and expenses are provided for the successful consumer litigant, and the bill is further refined so as to place a minimum extra burden on the courts by requiring as *a prerequisite to suit* that the purchaser give the [warrantor] reasonable opportunity to settle the dispute out of court, including the use of a fair and formal dispute settlement mechanism...."

119 Cong.Rec. 972 (Jan. 12, 1973) (emphasis added). Congressman Moss therefore made clear that the informal dispute settlement mechanisms or procedures are a "prerequisite," not a bar, to suit in court. The House report on the bill makes this point even clearer. The report states that "An adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding." H.R.Rep. 93–1107, 93d Cong., 2d Sess. 41, *reprinted in* 1974 U.S.C.C.A.N. 7702, 7723.[3] This history reflects that it was Congress's intent that any non-judicial dispute resolution procedures would be non-

binding, and consumers would always retain the right of final access to court.

*The Regulations.* The Federal Trade Commission has adopted a number of regulations pursuant to the Magnuson–Moss Act. These regulations mirror the Act's command that consumers should have full and final access to the courts for resolution of their disputes, with the exception that they could be required to pursue non-binding informal dispute resolution procedures. Under the regulations, a " 'mechanism' means an informal dispute settlement procedure which is incorporated into the terms of a written warranty." 16 C.F.R. § 703.1. The regulations, § 703.2, require that a mechanism comply with the "minimum requirements" prescribed by the Federal Trade Commission and contained in 16 C.F.R. §§ 703.3 through 703.8. However, in line with the notion that any mechanism established by a warrantor is merely a prerequisite, not a bar, to suit, the regulations further provide that "decisions of the mechanism shall not be legally binding on any person." 16 C.F.R. § 703.5(j). Moreover, and to bring this point further home, the regulations add that "The mechanism shall inform the consumer ... that ... [i]f he or she is dissatisfied with its decision or warrantor's intended actions, or eventual performance, legal remedies, including use of small claims court, may be pursued." § 703.5(g).[4]

*History of the Regulations.* If there is any remaining doubt that the Magnuson–Moss Act and the regulations promulgated pursuant to it do not allow for binding non-judicial dispute resolution of the type provided in the arbitration clause in the installment

---

**2.** The court does not reach whether the arbitration clauses in the contracts between the plaintiffs and Hart's Mobile Home comply with the "minimum requirements" now prescribed by the Federal Trade Commission in its regulations.

 The court also does not reach the issues of whether the FAA and arbitration agreements in general are unenforceable as to all claims based on the Magnuson–Moss Act. The court concludes only that the ones between the plaintiffs and Hart's Mobile Home are unenforceable by Waverlee.

**3.** The report goes on to say, however, that "the decision reached in any informal dispute settle-

ment procedure relating to any matter considered in such procedure would be admissible in any civil action arising out of a warranty on a consumer product if the procedure complies with the FTC's rules and is incorporated as a part of a written warranty pertaining to consumer products." H.R.Rep. 93–1107, 93d Cong., 2d Sess. 41, *reprinted in* 1974 U.S.C.C.A.N. 7702, 7723. *See infra* note 4.

**4.** The decision of the mechanism is, however, "admissible in evidence" in court. 16 C.F.R. § 703.5(g)(2).

sales and financing contracts between the plaintiffs and Hart's Mobile Home, that doubt is fully dispelled by the history of the regulations. Upon adopting 16 C.F.R. § 703.5(j) (which states that decisions of the mechanism "shall not be legally binding"), the Federal Trade Commission responded to public comments from industry representatives in favor of binding arbitration by remarking as follows:

> "Several industry representatives contended that warrantors should be allowed to require consumers to resort to mechanisms whose decisions would be legally binding (e.g., binding arbitration). The Rule does not allow for this for two reasons. First, ... Congressional intent was that Section 110 Mechanisms not be legally binding. Second, even if binding Mechanisms were contemplated by Section 110 of the Act, the Commission is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but nonjudicial, proceeding. The Commission is not now convinced that any guidelines which it set out could ensure sufficient protection for consumers against warrantors, even if the Congressional report had not made clear, as it did, that it wished for such mechanisms to not be binding."

40 Fed.Reg. 60168, 60210 (1975). The Commission then goes on to state that "reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act." *Id.* at 60211.[5] These comments make clear that binding arbitration, of the kind contained in the contracts between the plaintiffs and Hart's Mobile Home, is not permissible under the regulations promulgated by the Federal Trade Commission.

2.

The parties argue at great length about whether the FAA overrides the Magnuson–Moss Act and whether the Magnuson–Moss

Act in fact precludes waiver of judicial remedy for violations of the rights of purchasers. What must be remembered, however, is that the court is not here confronted with a direct conflict between these two statutes. The limited and only issue before the court is whether Waverlee's enforcement of the specific binding arbitration clauses contained in the contracts with Hart's Mobile Home would violate the Magnuson–Moss Act.[6]

The court is also not presented with a picture pitting the purchaser's right to litigate a breach of seller's warranty against the seller's right to invoke a contractual arbitration clause. In other words, the combatants here are not Hart's Mobile Home and the plaintiffs. Rather, the issue is once removed; it is a cousin issue. Here, because Congress has addressed, in a definitive manner, the availability and scope of nonjudicial remedies for resolution of disputes between warrantors and consumers, it is no surprise, and no oversight, that the Waverlee warranty for the plaintiffs' motor homes makes no mention of alternative mechanisms. Had Waverlee sought to include, in its warranty, the type of absolute bar on judicial remedies it is seeking here, it would have been in clear and direct violation of the Magnuson–Moss Act. Instead, by relying on the installment sales and financing contracts between the plaintiffs and Hart's Mobile Home, Waverlee seeks to do by surrogate or vicarious means what it is forbidden to do on its own behalf. The striking consequence of allowing a manufacturer like Waverlee to piggyback on an arbitration clause in a consumer contract between seller and consumer, limited on its very face to disputes between those signatory parties, would be the complete and utter evisceration of the Magnuson–Moss Act. If Waverlee had third-party standing, or estoppel grounds, for compelling arbitration with a dissatisfied consumer, then every manufacturer, obligated by state and federal law to provide certain warranties for the protection of consumers, merely by introducing its products into the stream of commerce, and

**5.** The Commission makes clear, however, that, after the warrantor and the consumer have pursued the settlement procedures established under the Magnuson–Moss Act, the warrantor may "offer a binding arbitration option" to the consumer. 40 Fed.Reg. 60168, 60211 (1975). But reference to such in the warranty is prohibited. *Id.*

**6.** *See supra* note 2.

colluding with product retailers to insert broad and all-inclusive arbitration clauses in consumer contracts, would always be able to avoid the strictures and edicts of the Magnuson–Moss Act. The court refuses to extend the law of third-party beneficiary contract rights, or of equitable estoppel, to reach so profoundly inequitable a result under the Act.

Accordingly, it is hereby ORDERED that the motions by defendant Waverlee Homes, Inc., to compel arbitration and to stay discovery, filed in these two cases on July 26, 1996, are denied.