Eddie **LEWIS, et al., Plaintiffs,**

v.

The **HASKELL COMPANY, INC., and Louis Gouygou, Defendants.**

No. Civ.A. 98–T–816–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 4, 2000.

Alvin T. Prestwood, Volz, Prestwood & Hanan, PC, Montgomery, AL, Richard D. Lively, Prattville, AL, for plaintiffs.

T. Camille Gruber, McGuire, Woods, Battle & Boothe, LLP, Jacksonville, FL, Richard N. Margulies, Akerman Senterfitt, Jacksonville, FL, for defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

The plaintiffs, Gilmore & Sons, Inc. (G & S) and three of its employees (Eddie Lewis, Larry Lewis, and Maurice Mims, who are African–Americans), charge the defendants, Haskell Company, Inc. (HCo.) and one of its supervisors (Louis Gouygou), with various federal and state law violations arising out of work done at a construction project pursuant to a subcontract between G & S and HCo. The plaintiffs charge that the defendants discriminated against the Lewises and Mims because of their race in violation of 42 U.S.C.A. § 1981. They also assert various state-law claims, including breach of contract, tortuous interference with business contract, general negligence and wantonness, negligent training and supervision, and outrage. The jurisdiction of the court has been properly invoked pursuant to 42 U.S.C.A. §§ 1331 (federal question), 1343 (civil rights), and 28 U.S.C.A. § 1367 (supplemental).

This lawsuit is now before the court on the defendants' motion to compel arbitration and stay proceedings. For the reasons that follow, the motion will be granted.

## I. BACKGROUND

The facts, as alleged in the plaintiffs' complaint, are as follows: In October 1997, HCo., as a general contractor, entered into a subcontract with G & S for the removal and replacement of concrete floor slabs at a construction job site in Montgomery, Alabama. Three of the persons with whom G & S contracted to perform the work were the Lewises and Mims. According to the Lewises and Mims, project superintendent Gouygou subjected them to pervasive racial harassment and discrimination. Examples include:

—The Lewises and Mims were not allowed to eat and drink in the same "break area" in which white workers were allowed to eat and drink. Gouygou imposed the restriction because he was "tired of seeing chicken bones all over the place."

—Gouygou referred to the Lewises and Mims as "niggers," "nigger mother fuckers," and "doo dah mother fuckers."

—Gouygou was aware of racially offensive graffiti on the walls of the employee bathroom, and he took no steps to investigate the matter or to have the walls cleaned.

As a result of their treatment at the job site, G & S, along with its employees, the Lewises and Mims, refused to work at the job site.

G & S, the Lewises, and Mims, then filed this lawsuit in federal court asserting the above federal and state-law claims against HCo. and Gouygou. The defendants have now responded with the pending motion to compel arbitration and stay proceedings. In support of their motion, the defendants rely on an arbitration clause contained in HCo. and G & S's subcontract, which provides that "any disputes arising from or concerning this sub-

**1290**

contract shall be arbitrated in accordance with the Construction Arbitration Rule of the American Arbitration Association."

## II. DISCUSSION

The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1–16, makes enforceable a written arbitration provision in a "contract evidencing a transaction involving commerce." 9 U.S.C.A. § 2. Commerce is defined in the FAA as "commerce among the several states." 9 U.S.C.A. § 1. The parties do not dispute that this interstate-commerce requirement is met here.

Section 3 of the FAA requires a federal court to stay proceedings pending the outcome of arbitration for "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C.A. § 3. Section 4 further provides, with regard to motions to compel arbitration, that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue", a federal court shall grant the petition. 9 U.S.C.A. § 4.

■ "[T]he 'primary purpose' of the FAA is to ensure 'that private agreements to arbitrate are enforced according to their terms ... Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their agreements as they see fit.'" *Wilson v. Waverlee Homes*, 954 F.Supp. 1530, 1533 (citations omitted) (Thompson, J.) (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 1255–56, 103 L.Ed.2d 488 (1989)). It is a cardinal principle of federal arbitration law that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

■ It is the court's task, unless the parties have explicitly agreed otherwise, to determine whether an agreement to arbitrate exists between parties. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942–47, 115 S.Ct. 1920, 1923–25, 131 L.Ed.2d 985 (1995). In making this determination, the court should apply ordinary state common law governing the formation of contracts, with due regard for the federal policy favoring arbitration. *See Volt Info. Sciences*, 489 U.S. at 475–76, 109 S.Ct. at 1254; *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 & n. 9, 115 S.Ct. 1212, 1219 & n. 9, 131 L.Ed.2d 76 (1995). However, only state laws that are applicable to contracts generally may be applied to arbitration agreements; a state law that singles out arbitration agreements for disfavored treatment is displaced by the FAA. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996); *see also Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995) (states may regulate contracts, including arbitration clauses, under general contract law principles, but may not single out arbitration clauses for disfavor); *First Options of Chicago*, 514 U.S. at 944, 115 S.Ct. at 1924 (state law generally governs the determination of whether the parties agreed to arbitrate a certain matter).

■ It is almost axiomatic, as a first rule of state common law governing the formulation of contracts, that parties must manifest assent to a bargain in order to be bound under it. *See* Restatement (Second) of Contracts § 17. Hence, state law generally parallels the Supreme Court's observation in *AT & T Technologies* that " 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" 475 U.S. at 648, 106 S.Ct. at 1418 (quoting *Warrior & Gulf Navig. Co.*, 363 U.S. at 582, 80 S.Ct. at 1353); *see also Old Republic Ins. Co. v.*

*Lanier,* 644 So.2d 1258, 1260 (Ala.1994). Thus, as a general matter, one "who is not a party to a contract has no standing to compel arbitration," *Britton v. Co-op. Banking Group,* 4 F.3d 742, 744 (9th Cir. 1993); *Ex Parte Stallings & Sons, Inc.,* 670 So.2d 861, 862 (Ala.1995); and it would also follow, as a general matter, that one who is not a party to a contract cannot be compelled to arbitrate. But these are general propositions and statements, and thus there are important exceptions to them, as the court will discuss later.

The plaintiffs contend that they are not subject to the arbitration clause in the subcontract between HCo. and G & S. The plaintiffs do not argue that, because their claims are based on race discrimination in employment or are in part based on an anti-discrimination statue, they are not subject to the FAA. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Kidd v. Equitable Life Assurance Society of the United States,* 32 F.3d 516 (11th Cir.1994); *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698 (11th Cir.1992). Rather, the plaintiffs make more general arguments that would be applicable to their claims regardless as to whether they were so limited.

First, the plaintiffs argue that the arbitration provision in the subcontract conflicts with the following provisions in the general contract:

"Without prejudice to any other right or remedy available under the Agreement or law, in the event such a lien, claim or notice thereof is filed and/or maintained in contravention of Paragraph 12(a), Owner shall have the right ... to discharge, satisfy or bond same and the Contractor shall pay or cause to be paid to the Owner the amount of lien and the Owner's damages, including, without limitation, all expense incident to discharging, satisfying, or bonding the lien or claim or notice thereof, including attorney's fees, costs and disbursements."

General Contract Agreement, ¶ 12(b).

"The contractor shall have the right to make only such claims as are permitted by a specific provision of the Agreement."

*Id.,* Article 1, § 1.7(a).

"Neither the Contractor nor any person or entity acting directly or indirectly through or under the Contractor shall make any claim or bring any action against the owner for the payment of any money for costs which are to be paid or borne by the Contractor under the Agreement or for any costs, damages or other matter waived or released by the Contractor under the Agreement."

*Id.,* Article 1, § 1.7(b).

"If there is a delay at any time in the commencement performance, or completion of the Work ... by litigation of a dispute, claim or other matter in question arising out of, or relating to, the Agreement ... and to the extent that such delays could not have been avoided by Contractor, or its Subcontractors ... then the Contract Time may be extended by the Owner by Change Order...."

*Id.,* Article 5, § 5.2.

"To the fullest extent permitted by law, the Contractor shall defend, protect, ... the Owner ... from ... Any and all claims, actions, liabilities ... arising out of or incidental to the Work or services and activities, of the Contractor or any Subcontractors or other person or entity acting directly or indirectly through or under the Contractor...."

*Id.,* Article 8, § 8.3(a)(1).

"In the event any claim or action is brought, made, or asserted by an employee of the Contractor or of any Subcontractor or any other person or entity acting directly or indirectly through or under the Contractor, any defense, hold harmless or indemnification obligation of the Contractor under the Agreement shall not be limited or barred in any way

by any limitation on the amount or type of damages, compensation, or benefits payable...."

*Id.*, Article 8, § 8.3(b).

"In no event shall the Owner be liable to the Contractor or any person or entity acting directly or indirectly through or under the Contractor for any consequential, punitive or other damages it being intended that the entirety of Paragraph 11.1 be the exclusive basis upon which any action at law or equity may be brought against the Owner and only the Contractor shall have any cause of action hereunder which shall be personal solely to the Contractor and not assignable in any other form whatsoever."

*Id.*, Article 11, § 11.1(d).

"In the event ... the Owner terminates the Agreement ... the Contractor disputes the Owner's right or grounds for so doing, and ... the Owner is adjudicated by a court of competent jurisdiction as having no right or grounds for so terminating, then such termination by Owner shall be conclusively presumed in law to have been a convenience termination and the damages for which the Owner may be liable shall be limited to those specified in Paragraphs 11.1(c) and (d) and no other damages."

*Id.*, Article 11.1(e).

The plaintiffs maintain that these provisions directly conflict with the arbitration provision in the subcontract and that, under the conflict resolution provision in the subcontract—which provides that, "If the General Contract, which is herein incorporated by reference varies or conflicts in any provision of the Subcontract Agreement, or any modification hereof, the General Contract shall govern"—the arbitration provision must give way to the above provisions in the general contract.

■ The plaintiffs' argument is meritless. First of all, the above provisions in the general contract address the circumstance where a party might find itself involved in litigation; these provisions do not necessarily prohibit an arbitration proceeding. But, second and perhaps more importantly, these provisions cover the relationship between the general contractor (HCo.) and the owner (CSC Distribution, Inc.); whereas the subcontract covers the relationship between the general contractor (HCo.) and its subcontractor (G & S). The subcontract therefore covers a relationship different from that covered in the general contract, and thus the fact that the subcontract contains an arbitration agreement in no way impinges upon the different relationship at issue in the general contract.

■ The plaintiffs suggest that they cannot be compelled to arbitrate because they were not parties to the agreement that contains the arbitration clause, that is, the subcontract. As the court has already noted, " 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Technologies*, 475 U.S. at 648, 106 S.Ct. at 1418 (quoting *Warrior & Gulf Navig. Co.*, 363 U.S. at 582, 80 S.Ct. at 1353).

First, the plaintiffs' argument fails as to plaintiff G & S, because G & S was a party to the subcontract. Second, although the Lewises and Mims were not signatories to the subcontract, their argument still fails as to them. And, in assessing why their argument fails, it is important to keep in mind a somewhat unique aspect of this case. To be sure, if the Lewises and Mims were suing only their actual employer—that is, G & S—a very strong argument could be made that the arbitration clause would have no application because the subcontract (and the arbitration clause in it) would not be implicated. But here, unlike in that hypothetical instance, the Lewises and Mims are seeking to hold their employer's principal liable (that is, not their employer or the party with whom they had an immediate employment contract but rather someone who was not their employer and was instead the party with whom their employer had a contract), and, as the court will now explain, to do that they

must be bound by the contractual relationship between their employer and their employer's principal, that is, the subcontract.

Section 1981 provides relief for race discrimination in the "making, performance, modification, and termination" of a contract. 42 U.S.C.A. § 1981(b). However, as the plaintiffs admit in their complaint, the Lewises and Mims were "contract laborers for plaintiff Gilmore," not for HCo. ·Thus, the only contractual basis on which the Lewises and Mims could rest their § 1981 claim against HCo. would have to be the contract between G & S and the HCo., or be at least derivative of it; in other words, the Mims and Lewises did not work for the HCo. but rather worked for G & S and, in seeking to enforce any contractual rights against HCo. growing out of their employment, they would have to go through the contract that G & S had with HCo. Thus, the subcontract still controls because it is the only arguable 'contractual' basis for any relationship between HCo. and the Lewises and Mims, with the result that it makes no difference that the Lewises and Mims were not actual signatories to the subcontract.

Similarly, the plaintiffs' breach-of-contract claim against HCo. relies on the subcontract. The plaintiffs allege in this claim that, "as a condition of the contract between Plaintiff [G & S] and Defendant [HCo.], Plaintiff [G & S] was to furnish, among other things, all necessary labor to fully perform and accomplish the work specified in said contract," and that "Defendant [HCo.] breached said contract by not allowing and intentionally interfering with Plaintiff [G & S]'s ability to hire and furnish said labor necessary to execute the covenants in the contract between Plaintiff [G & S] and Defendant [HCo.]." The contract at the heart of this claim, that is, the one between G & S and HCo., is of course the subcontract.

And, similarly, in their negligent-training-and-supervision claim, the plaintiffs allege, among other things, that HCo. breached its duty to G & S to train its supervisory staff properly. Of course, the only duty HCo. would have to G & S would arise out of the subcontract they had with each other.

And, as to all claims asserted by the plaintiffs, it must be remembered that, in the general contract between the owner and HCo.,· the contract defines subcontractor to include not only the subcontractor but its employees. *See* General Contract, (" 'Subcontractor' means a person or organization who has a direct contract ('Subcontract') with the Contractor to perform a portion of the Work at the Site. The term 'Subcontractor' includes any employee, agent, officer, director, partner, principal, and representative of a Subcontractor."). Thus, when the Lewises and Mims entered into employment with G & S, they became, under the general contract and under the subcontract (because it incorporates the general contract), subcontractors along with G & S, and thus bound as such.

Finally, the law is clear that, "There are instances, and cases, where non-signatories to arbitration clauses may be equitably compelled to pursue their claims against a defendant in arbitration." *Waverlee Homes, Inc.,* 954 F.Supp. at 1534; *see also, e.g., In re Oil Spill by Amoco Cadiz,* 659 F.2d 789, 796 (7th Cir.1981) (plaintiff who invokes the doctrine of agency to gain standing to assert a claim against a defendant cannot later disavow an arbitration clause in the contract between its agent and the defendant); *Dunn Const. Co. v. Sugar Beach Condominium Ass'n,* 760 F.Supp. 1479 (S.D.Ala.1991) (Vollmer, J.) (party seeking status under contract as third-party beneficiary is estopped from later renouncing that status in order to prevent a party to the contract from compelling it to arbitrate a claim). And there are cases where, in general, ordinary contract and agency principles demand that nonsignatories be bound by arbitration clauses. *See Thomson–CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995) (presenting a list of common law contract and agency

principles under which nonparties to arbitration clauses may be bound to arbitration agreements of others, but distinguishing these from cases where nonparties seek to bind parties to contractual arbitration clauses); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110, 1121 (3rd Cir.1993) (principal and agent should both be bound to an arbitration agreement entered into by one of them when charges against both are based on the same facts and are inherently inseparable).

These principles of agency and third-party beneficiaries apply here. In hiring the Lewises and Mims, G & S was acting, pursuant to the subcontract, as essentially the agent of HCo., with HCo. as principal, and, in their effort now to hold HCo. liable, the plaintiffs cannot now renounce the agency relationship, including the subcontract on which it is based. Similarly, the Lewises and Mims—by asserting claims not against their immediate employer but rather against the general contractor with whom their employer had a contract—are essentially placing themselves in the position of third-party beneficiaries of the subcontract between their immediate employer (G & S) and the general contractor, and, again they cannot now renounce the subcontract upon which that third-party beneficiary status must be based.

The Lewises and Mims further argue that the arbitration clause in the subcontract is not binding on them because there was no consideration between them and anyone else for its enforcement. Without question, the Lewises and Mims were hired by G & S as "contract laborers" as a result of the subcontract that G & S had with HCo. This employment arrangement is sufficient consideration for application of the arbitration clause in the subcontract.

 Finally, although it is unclear, it appears that the plaintiffs argue that, in order for the arbitration clause to apply, there must be consideration for the clause separate and distinct from that which supports the contract as a whole. The Alabama Supreme Court, in surveying state law which obviously applies here, has expressly rejected this argument. *See Green Tree Financial Corp. of Ala. v. Vintson,* 753 So.2d 497, 502 n. 3 (Ala.1999).

## III. CONCLUSION

Because the court is satisfied that arbitration should be held in this case, it will "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. § 4.

An appropriate judgment will be entered.