Maurice RICHARDSON, an individual, Karen Richardson, an individual, Plaintiffs-Appellees,

v.

PALM HARBOR HOMES, INC., a corporation, Defendant-Appellant.

No. 00-12858.

United States Court of Appeals,

Eleventh Circuit.

June 28, 2001.

Appeal from the United States District Court for the Northern District of Alabama.(No. 00-00454-CV-J-S) Inge P. Johnson, Judge.

Before WILSON and COX, Circuit Judges, and RYSKAMP[*], District Judge.

COX, Circuit Judge:

Palm Harbor Homes, Inc., a retailer of mobile homes, appeals the district court's denial of its motion to compel arbitration of a breach-of-express-warranty claim against it. We reverse and remand.

*Background*

Maurice and Sabrina Richardson bought a mobile home manufactured by Grand Manor Homes, Inc. from Palm Harbor. Grand Manor issued them a one-year warranty against defects in materials and workmanship. The mobile home proved on delivery to be riddled with such defects, and the Richardsons immediately requested repair under the warranty. Unsatisfied with the response, the Richardsons sued Palm Harbor, Grand Manor, and Bombardier Capital, Inc., which financed their purchase, for breach of written, express, and implied warranties.

Palm Harbor (as well as the other defendants) moved to compel arbitration of the claims against it based on a predispute agreement, signed by Mr. Richardson at closing, in which Mr. Richardson and Palm Harbor agreed to binding arbitration of all disputes between them about the mobile home, including warranty disputes. The Richardsons opposed Palm Harbor's motion, in part because they believed that the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2310(a), voided their predispute assent to arbitrate.

The district court agreed with the Richardsons in part, holding that the MMWA prohibits arbitration of express-warranty claims. The court accordingly denied Palm Harbor's motion to compel arbitration of the express-warranty claims against it. The court did, however, compel arbitration of the implied-warranty claims

[*]Honorable Kenneth L. Ryskamp, U.S. District Judge for the Southern District of Florida, sitting by designation.

against Palm Harbor.[1]

Palm Harbor appeals, invoking our jurisdiction under 9 U.S.C. § 16(a). (The Richardsons have not invoked our pendent appellate jurisdiction to cross-appeal, and the part of the order compelling arbitration is therefore not before us.) Palm Harbor makes two alternative arguments: first, that the MMWA does not prohibit binding arbitration at all; and second, that even if it did, it would not bar arbitration of the specific claims that the Richardsons have made against Palm Harbor. These arguments present legal issues about the arbitrability of certain claims, and we consider them de novo. *See Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1060 (11th Cir.1998) (Cox, J., joined by Tjoflat, J.).

*Discussion*

The Federal Arbitration Act (FAA), 9 U.S.C. § 2, explicitly makes predispute arbitration agreements presumptively enforceable if they "evidenc[e] a transaction involving commerce," which this one undisputedly does. Congress may, of course, revoke this approval of arbitration agreements and "preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 227, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). Such an intent must be " 'deducible from [the statute's] text or legislative history' " or "from an inherent conflict between arbitration and the statute's underlying purposes." *Id.,* 107 S.Ct. at 2338 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (alterations in *Shearson*)). No one argues that enforcing predispute arbitration agreements "inherently conflicts" with a statute that regulates consumer warranties, but the Richardsons contend—with support from at least two courts—that the MMWA's "text or legislative history" show an intent to override the FAA and to render unenforceable predispute agreements to submit warranty disputes to binding arbitration. *See Wilson v. Waverlee Homes, Inc.,* 954 F.Supp. 1530, 1539 (M.D.Ala.) (Thompson, J.), *aff'd without opinion,* 127 F.3d 40 (11th Cir.1997); *Southern Energy Homes, Inc. v. Lee,* 732 So.2d 994, 999-1000 (Ala.1999), *overruled, Southern Energy Homes, Inc. v. Ard,* 772 So.2d 1131, 1135 (Ala.2000); *see also Cunningham v. Fleetwood Homes of Ga., Inc.,* --- F.3d ----, ---- (11th Cir.2001) (a manufacturer may not avail itself, as a third-party beneficiary, of a presale arbitration agreement between the retailer and the consumer, when the warranty does not mention the arbitration agreement).

---

[1]The district court initially declined to compel Mrs. Richardson to arbitrate because she is not a party to the arbitration agreement. It later reversed that ruling, however, on the ground that Mrs. Richardson is a third-party beneficiary of the arbitration agreement. Mrs. Richardson has not appealed that ruling.

The Richardsons' and these courts' reasoning relies on inferences from the statute, its history, and interpretation of the Act by the Federal Trade Commission (FTC). First, the statute provides a federal judicial forum for claims of breach of written or implied warranties. *See* 15 U.S.C. § 2310(d); *Wilson,* 954 F.Supp. at 1537 (starting its analysis with the observation that the MMWA expressly provides a federal cause of action). Second, the MMWA endorses, and makes enforceable, provisions in written warranties requiring *nonbinding* dispute resolution, provided that the informal procedures prescribed comply with regulations issued by the FTC. *See* 15 U.S.C. § 2310(a)(1)-(3)[2]; *Cunningham,* --- F.3d at ----. The FTC's regulations under the Act that permit a warrantor to demand an effort at extrajudicial dispute resolution, moreover, provide only for nonbinding proceedings. *See* 16 C.F.R. pt. 703. The FTC has indeed been explicit that its regulations "do[ ] not allow for" binding alternative dispute resolution. Disclosure of Written Consumer Product Warranty Terms and Conditions, 40 Fed.Reg. 60168, 60210 (December 31, 1975). The provision of a federal claim for breach of some warranties and this strong preference for nonbinding informal dispute

---

[2]The MMWA provides in pertinent part:

> (1) Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms.
>
> (2) The Commission shall prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of this chapter applies. Such rules shall provide for participation in such procedure by independent or governmental entities.
>
> (3) One or more warrantors may establish an informal dispute settlement procedure which meets the requirements of the Commission's rules under paragraph (2). If—
>
>> (A) a warrantor establishes such a procedure,
>>
>> (B) such procedure, and its implementation, meets the requirements of such rules, and
>>
>> (C) he incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty,
>
> then (i) the consumer may not commence a civil action (other than a class action) under subsection (d) of this section unless he initially resorts to such procedure; and (ii) a class of consumers may not proceed in a class action under subsection (d) of this section except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the named plaintiffs (upon notifying the defendant that they are named plaintiffs in a class action with respect to a warranty obligation) initially resort to such procedure.

15 U.S.C. § 2310(a).

resolution, according to the Richardsons and the courts that subscribe to this reasoning, together spell prohibition of binding arbitration of consumer warranty claims, notwithstanding the FAA.

But even these courts do not suggest that the statute and its history show that Congress meant to supersede the FAA with respect to *all* consumer warranty claims. *See Boyd v. Homes of Legend, Inc.,* 981 F.Supp. 1423, 1437-38 (M.D.Ala.1997) (Thompson, J.) (MMWA supersedes FAA only with respect to claims of breach of a written warranty, not of unwritten express or implied warranties). The MMWA, after all, has a "far more limited mission" than to become the "dominant regulator of consumer product warranties." *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1013 (D.C.Cir.1986). It prescribes different federal limitations and regulations for different kinds of warranties and leaves other warranty law untouched. The Act's consumer-suit provision, for instance, supplies a federal remedy for breach of written and implied warranties, but not for oral express warranties, which remain the domain of state law. *See* 15 U.S.C. § 2310(d)(1); *see Walsh,* 807 F.2d at 1015 (explaining why Congress excluded oral express warranties from the consumer-remedy provision). The Act prescribes content and minimum standards for written warranties, *see* 15 U.S.C. §§ 2302, 2304, but it is content to supplement state-law implied warranties only by prohibiting their disclaimer in certain circumstances, *see* 15 U.S.C. § 2308, and affording a federal remedy for their breach. Closer to our subject here, furthermore, the Act's preference for nonbinding dispute resolution, arguably to the exclusion of binding arbitration, expressly applies only to dispute-resolution mechanisms for which *written* warranties provide as a prerequisite to suit. *See* 15 U.S.C. § 2310(a)(2), (3) ("The [FTC] shall prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty...."). Finally, the Act is arguably not universally hostile to binding dispute resolution, at least not explicitly; the general policy is to "encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1). The MMWA's text and history may thus show that any arguable restriction on agreements providing for binding arbitration reaches those agreements relating to some kinds of warranties, for instance for written warranties, *Cunningham,* --- F.3d at ----, but not others.

This suspicion of a limited restriction on arbitrability means that a first step in arbitrability analysis is to pin down the nature of the claim. Often that is simple, but it is not here because the complaint is vague. It begins with a proper and concise recitation of the factual basis for all the Richardsons' claims. But then it articulates the claims, grouped in three counts, in a way that leaves it unclear who the defendants are to each

claim, and what exactly is the warranty that the Richardsons believe to have been breached.

Count I, the most likely home of the express-warranty claim whose arbitrability we are considering, alleges that a "Defendant expressly represented that said manufactured home was free from defects in materials and workmanship" (R.1 ¶ 15), and that "Defendants, Grand Manor and [Palm Harbor] have repeatedly failed and refused to remedy the said defect after more than reasonable time and opportunities to do so" (*id.* ¶ 16). This conduct, Count I says, "is in direct violation to [*sic* ] the written and *oral* representations of warranties under the Uniform Commercial Code 7-2-313 and is a breach of the express warranties given by the Defendant*s* " (*id.* ¶ 17 (emphasis added)). One trait of the Count I claim is clear; it is brought under state law, Alabama's version of the Uniform Commercial Code's express-warranty provision, § 2-313, and not under the consumer-suit provision of the MMWA, 15 U.S.C. § 2310(d). If Count I's language did not suffice to make its legal basis clear, comparison to Count III would dispel all doubt. Count III, expressly titled "Magnuson-Moss," alleges that "Defendant has violated the Magnuson-Moss Warranty Act, 15 U.S.C. 2301 et seq." (*Id.* ¶ 25.) Count I's omission of the MMWA is thus telling.

But Count I does not clearly disclose who the "Defendant" who made the warranty is, or how the warranty was made. For that information, we have to resort to guesswork and inference by looking at the rest of the complaint. Two features stand out. First, Count III—the Magnuson-Moss claim—also alleges a breach of an express warranty, but it is plainly against Grand Manor alone. Although Count III, like Count I, alleges only that an unidentified "Defendant" made a warranty, it explicitly mentions only Grand Manor's written warranty, and then its ad damnum clause limits its basis to "Defendant Grand Manor's conduct." (*Id.* ¶ 28.) Count II does not mention express warranties at all. If this complaint indeed contains an express-warranty claim against Palm Harbor—and the parties and the district court all seem to think that it does—it must be the one in Count I, and Palm Harbor must therefore be the "Defendant" who made the alleged representation. Second, the only warranty that the complaint specifically identifies anywhere is the written one issued by Grand Manor. That is the only one that Count I, by its unhelpful clause that "adopts and re-alleges all of the above allegations" (*id.* ¶ 14) refers to. Because Grand Manor is the only warrantor under the written agreement, it appears that in Count I the Richardsons are seeking to hold Palm Harbor liable for breach of some oral express warranty that the complaint simply does not describe, notwithstanding the enigmatic reference to "written ... representations of warranties." (*Id.* ¶ 17.) Because of these features of the complaint, we conclude that the only express-warranty claim against Palm Harbor, and thus the only claim whose

arbitrability we are considering, is a claim under Alabama's UCC for breach of an oral express warranty. The district court did not determine whether the Count I claim against Palm Harbor was for breach of written or oral express warranty, and our conclusion does not therefore conflict with the district court's reading of the complaint.

That kind of state-law claim is simply outside any superseding scope of the MMWA. As explained above, if the MMWA supersedes the FAA at all for any claims, it is by the negative implication of the MMWA's provisions and history approving and regulating the prescription of nonbinding, as opposed to binding, extrajudicial dispute resolution. *See Cunningham,* --- F.3d at ----. That regulation of nonbinding dispute resolution is limited to provisions in written warranties. *See* 15 U.S.C. § 2310(a)(2), (3). The House report's explanation of the policy behind this provision, too, focuses on "informal dispute settlement procedure which is incorporated in any written warranty," H.R.Rep. No. 93-1107 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7722. The FTC's implementing regulations follow suit, addressing only the requirements for dispute-resolution provisions in written warranties. *See* 15 C.F.R. § 704.2(a). The negative inference we can draw from this about Congress's intent with regard to arbitration of state-law oral express warranty claims is thus very weak. The FTC's own conclusions about Congress's intent do not draw any inference about arbitration of any claims other than ones based on written warranties; the FTC has explained that it "examined the legality and the merits of mandatory binding arbitration clauses in *written* consumer product warranties when it promulgated Rule 703," which prescribes standards for nonbinding dispute resolution mechanisms that warrantors may impose as preconditions to a court action, and concluded only that Congress did not wish to permit warrantors to demand binding arbitration as a condition of a written warranty. Final Action Concerning Review of Interpretations of Magnuson-Moss Warranty Act, 64 Fed.Reg. 19700, 19708 (Apr. 22, 1999) (emphasis added). Thus, even if the text and history of the MMWA could imply a silent supersedure of the FAA with respect to warranty claims, no such inference could fairly extend to a state-law claim for breach of an oral express warranty. Refusing to rely on these weak inferences about oral express warranties makes sense, moreover, given that the overwhelming focus of the drafters of the MMWA was dispelling the deceit that was then common in manufacturers' written warranties on new products, not to ensure that consumers had exclusively judicial remedies when they were misled by oral representations by retailers. *See* H.R.Rep. No. 93-1107 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7705-7711 (describing the widespread abuse by manufacturers in the issuing and honoring of written warranties).

The FAA thus still governs the arbitrability of the Richardsons' oral express warranty claim against Palm Harbor.  It makes agreements to arbitrate "valid, irrevocable, and enforceable" absent "such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. The Richardsons did advance one such ground, unconscionability, before the district court, but the district court rejected it after detailed briefing.  That decision goes unchallenged here.  The Richardsons make only an impassioned argument that arbitration is bad for the Richardsons, as for all consumers, because it does not provide an adequate remedy.  The Richardsons do not, however, explain in any detail why an arbitrator could not award them full relief.  Indeed, the opposite would seem to be true for a dispute of this simplicity.  Under the FAA, the arbitration agreement must be enforced.

## *Conclusion*

For the foregoing reasons, the district court's order refusing to compel arbitration of the express-warranty claim against Palm Harbor is reversed, and we remand for the district court to enter an order compelling the Richardsons to arbitrate that claim.

REVERSED AND REMANDED WITH INSTRUCTIONS.