[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 6, 2001
THOMAS K. KAHN
CLERK

————————————————

Nos. 00-12225 & 00-12510

————————————————

D. C. Docket No. 99-02605-CV-PT-E

GARY R. CUNNINGHAM, DELORES CUNNINGHAM,

Plaintiffs-Appellees,

versus

FLEETWOOD HOMES OF GEORGIA, INC.,

Defendant-Appellant.

————————————————

Appeals from the United States District Court
for the Northern District of Alabama

————————————————
**(June 6, 2001)**

Before ANDERSON, Chief Judge, HULL and COX, Circuit Judges.

COX, Circuit Judge:

Fleetwood Homes of Georgia, Inc. (Fleetwood) appeals the district court's

denial of Fleetwood's motion to compel arbitration pursuant to 9 U.S.C. § 16(a).

## I.  FACTS

In April of 1998, Gary and Delores Cunningham (the Cunninghams) purchased

a new mobile home manufactured by Fleetwood from Ronnie Smith's Home Center,

Inc. (Ronnie Smith's).  The mobile home came with a manufacturer's warranty, and,

as a part of the sales transaction, the Cunninghams executed an arbitration agreement

with Ronnie Smith's.[1]  Shortly after the purchase and installation of the home, the

Cunninghams contacted Ronnie Smith's and Fleetwood with a variety of complaints

---

[1]     The text of the arbitration agreement, in pertinent part, provides as follows:
This agreement for binding arbitration is this date entered between <u>Gary R. Cunningham and Delores Cunningham</u> hereinafter called "Buyer" and <u>Ronnie Smith's Home Center Mobile Home Center</u>, a corporation, hereinafter called "Seller." . . .  Buyer and Seller agree, covenant and consent that any controversies or claims arising out of or in any way relating to the sale of the said mobile home and the negotiations leading up to the sale, whether in the nature of covenant, warranty, misrepresentation, rescission, any breach of contract, or other tort shall be settled solely by arbitration in accordance with the applicable Rules of the American Arbitration Association then in effect, and that judgment upon award rendered by the arbitrators may be entered in and enforceable by any court of competent jurisdiction.  Buyer and Seller further agree that they shall submit any and all disputes, controversies and cases arising out of the negotiations for the sale and service of the mobile home, whether in the nature of contract, warranty or tort, to the decision of a three-person arbitration panel.  Buyer and Seller agree that they shall be bound by the determination of the said arbitration panel. . . . It is further agreed by the parties that all rights, privileges and responsibilities under this agreement shall expressly inure to the benefit of the manufacturer of the said mobile home insofar as any claims may exist or thereafter arise against the manufacturer, including but not limited to, enforcement of the warranties, whether express or implied.
(R.1-28 at 2-3).  In addition, the retail installment contract and security agreement conspicuously and explicitly detailed the parties' arbitration obligations.  (R.1-28 at 4).

2

about defects in the home. Unsatisfied with the response, the Cunninghams filed suit.

## II. PROCEDURAL HISTORY

The Cunninghams filed a complaint in Alabama circuit court alleging fraud, mental anguish and emotional distress, fraud in the inducement, negligence and wantonness, breach of contract, breach of express and implied warranties, breach of implied warranty of merchantability, violation of the Alabama Extended Manufacturer's Liability Doctrine, ALA. CODE 1975, § 6-5-500, *et seq.*, and violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301-2312. Fleetwood and Ronnie Smith's removed to federal district court on the basis of the Magnuson-Moss Warranty Act claims. *See* 28 U.S.C. §§ 1331, 1367 (1993).

Ronnie Smith's filed a motion to compel arbitration or in the alternative for dismissal, and Fleetwood subsequently joined in the motion. The district court, concluding that Fleetwood was a third-party beneficiary of the arbitration agreement but that the Magnuson-Moss Warranty Act precludes arbitration of the Cunninghams' written or express warranty claims, issued an order compelling arbitration of all claims except for the Magnuson-Moss claims for breach of written or express warranties. Fleetwood appeals.

3

## III.  ISSUE ON APPEAL

Fleetwood challenges the district court's conclusion that the Magnuson-Moss Warranty Act–Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301-2312 (Magnuson-Moss),  precludes Fleetwood from utilizing its third-party beneficiary status under the Ronnie Smith's–Cunningham arbitration agreement to compel binding arbitration of the Cunninnghams' breach of written or express warranty claims.  We assume for the purpose of deciding this case that Fleetwood is entitled to the benefit of the arbitration agreement.

## IV.  STANDARD OF REVIEW

We review an order denying a motion to compel arbitration de novo.  *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1060 (11th Cir. 1998).

## V.  CONTENTIONS OF THE PARTIES

Fleetwood notes that the Federal Arbitration Act (FAA) creates a presumption of validity for arbitration clauses, *see* 9 U.S.C. § 2, and argues that because Magnuson-Moss does nothing to disturb the FAA's mandate, the arbitration agreement must be enforced according to its terms.  *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 1255-56 (1989).  Fleetwood acknowledges that the FAA may be overridden by a contrary congressional command, but contends that an examination of the text, legislative

4

history, and purpose of Magnuson-Moss reveals no evidence of a congressional intent to prevent the enforcement of arbitration agreements. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 227, 107 S. Ct. 2332, 2337-38 (1987) (noting that Congress's intent to limit or prohibit waiver of a judicial forum for a particular claim will be deducible from a statute's text, legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes). The Cunninghams, on the other hand, argue that Magnuson-Moss and the rules promulgated by the Federal Trade Commission pursuant to Magnuson-Moss prohibit binding arbitration of warranty claims. Naturally, the Cunninghams contend that their view, not Fleetwood's, is supported by the legislative history and the stated purpose of Magnuson-Moss.

A.    The Text of the Magnuson-Moss Warranty Act

For their analysis of the text of Magnuson-Moss, the Cunninghams rely on the reasoning of opinions from district courts within this circuit. *See, e.g., Boyd v. Homes of Legend,* 981 F. Supp. 1423, 1434-41 (M.D. Ala. 1997); *Wilson v. Waverlee Homes, Inc.*, 954 F. Supp. 1530, 1537-39 (M.D. Ala. 1997). The Cunninghams note that 15 U.S.C. § 2310(d) creates a statutory right of action for consumers "who [are] damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter or under a written warranty, implied warranty, or service

contract . . . ." 15 U.S.C. § 2310(d). Also, in § 2310(a) Magnuson-Moss provides for the inclusion of informal dispute settlement mechanisms within written warranties,[2] and delegates to the Federal Trade Commission the authority to establish minimum requirements for these mechanisms. The Cunninghams argue that Magnuson-Moss prohibits binding arbitration by making § 2310(a)'s informal dispute settlement mechanism the only exception to the right of action created by § 2310(d); no other mechanisms are permitted. In other words, in the Cunninghams' view Magnuson-Moss permits alternative dispute resolution, including arbitration, but only of the non-binding sort that fits the § 2310(a)(3) description and that complies with the rules promulgated by the Federal Trade Commission.[3] *See id.* § 2310(a)(2); 16 C.F.R. § 703.5(j) (1999).

---

[2]    The text of the informal dispute settlement mechanism provision reads as follows: "[o]ne or more warrantors may establish an informal dispute settlement procedure which meets the requirements of the Commission's rules under paragraph (2). If–
       (A) a warrantor establishes such a procedure,
       (B) such procedure, and its implementation, meets the requirements of such rules, and
       (C) he incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty,
then (i) the consumer may not commence a civil action (other than a class action) under subsection (d) of this section unless he initially resorts to such procedure . . . ." 15 U.S.C. § 2310(a)(3).

[3]    The Federal Trade Commission, drafting regulations pursuant to the Act, has provided that "[d]ecisions of the Mechanism shall not be legally binding on any person." 16 C.F.R. § 703.5(j).

Fleetwood argues that § 2310(a)(1) only encourages inclusion of informal dispute resolution mechanisms in written warranties, and does not preclude enforcement of agreements to resolve claims by binding arbitration. Under Fleetwood's reading of Magnuson-Moss, the mechanism described by § 2310(a) is not the only method of alternative dispute resolution available to warrantors and consumers, and the statutory cause of action created by § 2310(d) merely confers a right that can be waived by express agreement. In support of this line of argument, Fleetwood notes that Magnuson-Moss expressly states that nothing in the Act shall invalidate or restrict any right or remedy of a consumer under any other federal law. 15 U.S.C. § 2311(b). In Fleetwood's view, this provision necessarily includes the substantive portions of the FAA that protect the ability of contracting parties to enter into binding arbitration agreements.

B. The Legislative History of the Act

Fleetwood argues that the legislative history of Magnuson-Moss does not express a clear intent to prohibit binding arbitration, but that at most, it evidences an intention to prohibit warrantors from including binding informal dispute resolution mechanisms in written warranties. Because the arbitration agreement at issue here was not in the manufacturer's warranty, but was instead a part of the sales transaction

7

between the buyer and the seller, Fleetwood contends that legislative history indicating concerns with the content of written warranties is inapplicable.

In response the Cunninghams note that at the time of Magnuson-Moss's passage members of Congress indicated that use of the informal dispute resolution mechanism was intended as only a prerequisite, and would not be a bar to a later civil action on the warranty. *See* H.R. REP. NO. 93-1107, (1974) *reprinted in* 1974 U.S.C.C.A.N. 7702, 7703. In keeping with their construction of the text, the Cunninghams interpret this statement as an indication that Congress expected that all informal dispute resolution mechanisms would be non-binding, as they would otherwise violate the provisions of the Act. In support the Cunninghams cite the regulations promulgated by the Federal Trade Commission pursuant to the Act, which detail the particulars of the informal dispute resolution mechanism of § 2310(a), as well as the history of the regulations, which includes statements by the Federal Trade Commission rejecting industry calls for the incorporation of legally binding mechanisms. *See* 40 Fed. Reg. 60,168, 60,211 (1975) (stating "reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act."). Fleetwood's retort courteous is to repeat that none of the above applies to arbitration agreements not in the written warranty.

C.    The Purpose of the Act

8

Fleetwood locates the purposes of Magnuson-Moss in the section detailing the Act's disclosure requirements, which reads: "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a). Fleetwood submits that enforcing seller–consumer arbitration agreements that make warrantors third-party beneficiaries does not conflict with these purposes. Fleetwood analogizes to the federal securities statutes, which share Magnuson-Moss's concern with the disclosure of information to consumers. Although, like Magnuson-Moss, the Securities Act of 1933 and the Securities Exchange Act of 1934 require disclosure to potential investors to prevent disinformation and fraud in a transactional context, the Supreme Court has held that claims brought under both acts can be subject to binding arbitration. *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 485-86, 109 S. Ct. 1917, 1922 (1989) (Securities Act of 1933); *McMahon*, 482 U.S. at 238, 107 S. Ct. at 2343 (Securities Exchange Act of 1934). Fleetwood concludes that the same reasoning applies to Magnuson-Moss claims.

The Cunninghams note that the legislative history provides that Magnuson-Moss was passed at least in part to "provide[] the consumer with an economically feasible private right of action," *Wilson*, 954 F. Supp. at 1538 (quoting 119 CONG. REC. 972 (1973) (remarks of Congressman Moss)), and they argue that allowing

9

Fleetwood to compel arbitration would force them to absorb costs that do not comport with the statutory policy of Magnuson-Moss. *See Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (finding conflict between statutory policy of Title VII and restrictive arbitration clause). Additionally, the Cunninghams argue that because Magnuson-Moss's purpose is to require manufacturers to include all information relevant to the warranty in the warranty itself, allowing Fleetwood to compel arbitration as a third-party beneficiary of the Ronnie Smith's–Cunningham agreement defeats the express purpose of the Act. The Cunninghams also submit that the absence of language in the warranty referencing the arbitration agreement is itself a violation of the Act, as Magnuson-Moss and the Federal Trade Commission regulations require full and conspicuous disclosure of the terms and conditions of the warranty. *See* 15 U.S.C. § 2302; 16 C.F.R. §§ 701.3, 703.2. Thus, the Cunninghams argue compelling arbitration on the basis of an arbitration agreement that is not referenced in the warranty[4] presents an inherent conflict with the Act's purpose of providing clear and concise warranties to consumers.

## VI.   DISCUSSION

A.    The Federal Arbitration Act

---

[4]     Fleetwood notes in its reply brief that the written warranty is not a part of the record in this appeal. However, it is undisputed that the warranty does not contain any reference to the arbitration agreement or to an informal dispute settlement mechanism.

10

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, "plac[es] arbitration agreements upon the same footing as other contracts." *McMahon,* 482 U.S. at 226-27, 107 S. Ct. at 2337 (citations omitted). The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Statutorily-created causes of action are no exception to the rule that arbitration agreements should be enforced according to their terms. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626-27, 105 S. Ct. 3346, 3354 (1985).

Agreements to arbitrate are essentially forum-selection clauses, *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519, 94 S. Ct. 2449, 2457 (1974), and by "agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi,* 473 U.S. at 628, 105 S. Ct. at 3354. However, Congress may limit or prohibit waiver of a judicial forum for specific statutory claims. *McMahon,* 482 U.S. at 227, 107 S. Ct. at 2337. To deduce such an intent, reviewing courts must scrutinize a statute's text and legislative history, and ascertain whether an inherent conflict exists between enforcement of the arbitration agreement and the statute's underlying purposes. *Id.,* 482 U.S. at 227, 107 S. Ct. at 2337-38.

B.   The Magnuson-Moss Warranty–Federal Trade Commission Improvement Act

Congress enacted the Magnuson-Moss Warranty Act "to improve the adequacy of information available to consumers, prevent deception, and [to] improve competition in the marketing of consumer products." 15 U.S.C. § 2302. Magnuson-Moss does not require manufacturers to provide warranties, but instead creates specific duties and liabilities for manufacturers that choose to do so. 16 C.F.R. § 700.03. The Act focuses primarily on written warranties for consumer products.[5]

The most significant provisions in Magnuson-Moss pertain to the disclosure of written consumer product warranty terms and conditions, the pre-sale availability of written warranty terms, the authorization of consumer suits for damages and other legal and equitable relief, and the procedures for creating informal dispute settlement mechanisms. *See* 15 U.S.C. §§ 2302-04, 2310. The Cunninghams argue that the text of these provisions evidences Congress's intention to prohibit or limit the waiver of judicial remedies for Magnuson-Moss claims. We turn first to § 2310, the civil action and informal dispute settlement mechanism section.

---

[5] Magnuson-Moss defines "written warranty" as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or . . . any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C. § 2301(6).

12

1.      Section 2310: the Civil Action and Informal Dispute Settlement Mechanism

Section 2310 of Magnuson-Moss provides a statutory cause of action to consumers "damaged by the failure of a supplier, warrantor, or service contractor to comply with [any obligation imposed by the Act] or under a written warranty, implied warranty or service contract." *Id*. § 2310(d)(1).  Suit may be brought in either state or federal court.[6] *Id*.  The Act also permits class actions, and in an effort to encourage consumers to pursue claims, Magnuson-Moss allows prevailing consumer litigants to receive attorneys' fees and costs.  *Id*. § 2310(d)(2), (e).

The Act also places certain impediments in the way of litigation-minded consumers.  First, prior to bringing suit for breach of warranty, a consumer must give persons obligated under the warranty a reasonable opportunity to "cure" the failure to comply with the obligations at issue.  *Id*. § 2310(e).  Second, in order to bring suit in federal court, the amount in controversy must be at least $50,000, exclusive of interests and costs.[7] *Id*. § 2310(d)(1)(B), (d)(3)(B).  Significantly, Magnuson-Moss

_____

[6]      Magnuson-Moss does not restrict the ability of consumers to pursue relief under Uniform Commercial Code or other state law theories, but merely establishes minimum federal standards within its limited ambit.  15 U.S.C. § 2311(b), (c); *see also* HOWARD J. ALPERIN AND ROLAND F. CHASE, 2 CONSUMER LAW: SALES PRACTICES AND REGULATION § 214 (1986) (describing design of Magnuson-Moss Warranty Act as complementing rather than superseding state warranty law).

[7]      Additionally, there is a $25 per claim requirement and there must be 100 named plaintiffs for Magnuson-Moss class actions.  15 U.S.C. § 2310(d)(3)(A), (d)(3)(C).

also gives warrantors the ability to establish procedural prerequisites to a consumer's civil action.

To encourage the settlement of consumer disputes by means other than civil suits, § 2310 allows warrantors to include informal dispute settlement mechanisms in the warranty. *Id*. § 2310(a)(3). So long as the mechanism complies with the Act's requirements and the rules established by the Federal Trade Commission,[8] *id*. § 2310(a)(3)(B), and the written warranty contains the requirement that the consumer utilize the mechanism before pursuing a legal remedy, *id*. § 2310(a)(3)(C), warrantors can make the informal dispute settlement process a mandatory prerequisite to instituting a consumer suit in state or federal court. *Id*.

The district court concluded that the informal dispute settlement procedure of § 2310(a)(3) is a non-binding mechanism, in that it serves at most as a prerequisite, and not a bar, to relief in court. We agree. The language of the section makes this clear when it states that, if a warrantor establishes a mechanism, "then . . . the consumer may not commence a civil action . . . unless he initially resorts to such procedure." *Id*. § 2310(a)(3). Congress's inclusion of the word "initially" in the

---

[8]     As in other areas, Magnuson-Moss delegates  to the Federal Trade Commission the prescription of minimum requirements for any informal dispute settlement procedure incorporated into the terms of a written warranty.  15 U.S.C. § 2310(a)(2).  The detailed requirements may be found at 16 C.F.R. § 703.1-8, and include among other things, the duties of the warrantor, who can qualify as a member of a dispute resolution panel, how the process must be conducted, and the method for keeping records.  *See* 16 C.F.R. § 703.1-8.

14

proviso clause indicates that once a consumer has utilized the warrantor's conforming mechanism, a subsequent civil action is permissible[9] – a possibility that binding arbitration does not anticipate. The legislative history buttresses this conclusion. One of the original sponsors of the bill explained that the informal dispute settlement mechanism was drafted as a possible "prerequisite to suit." 119 CONG. REC. 972 (1973). Additionally, the Federal Trade Commission, drafting regulations pursuant to the Act, has provided that "[d]ecisions of the Mechanism shall not be legally binding on any person." 16 C.F.R. § 703.5(j).

The Cunninghams contend, and the district court agreed, that the only permissible conclusion to be drawn from the text of § 2310 and the attendant legislative history is that Magnuson-Moss makes the non-binding § 2310 mechanism the sole exception to its guarantee of a consumer cause of action; these two alternatives eclipse the field of possibilities. Thus, binding arbitration agreements executed between buyer and seller that designate manufacturers as third-party beneficiaries violate the Act because they are binding, whether they are in the

---

[9] We do not consider here the possibility that a consumer may forgo utilization of the mechanism where the consumer pursues rights or remedies that are not created by but are actionable under Magnuson-Moss. *See* Rules, Regulations, Statements and Interpretations Under Magnuson-Moss Warranty Act, 40 Fed. Reg. 60,168, 60,194-95 (Dec. 31, 1975) (to be codified at 16 C.F.R. 701, *et seq*.) (discussing design of § 703.2(b) as intending "to ensure that the consumer is not deceived into believing that prior resort to the Mechanism is required in all instances.").

15

warranty or not, and they are therefore unenforceable. However, as Fleetwood notes, there is no explicit reference to binding arbitration in the statute, and a contrary conclusion is in fact permissible.

Since its decision in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S. Ct. 3346 (1985), which made clear the applicability of the FAA's mandate to statutorily-created causes of action, the Supreme Court has revisited similar arbitration issues in a variety of contexts.[10] A review of these cases convinces us that the district court was incorrect in concluding that, standing alone, the presence of the non-binding § 2310 mechanism in the statutory text requires the conclusion that Magnuson-Moss claims may not be the subject of binding arbitration agreements.

Aspects of § 2310 of Magnuson-Moss resemble provisions in statutory schemes previously considered in the Supreme Court's FAA jurisprudence. For instance, in *Gilmer* the Court noted that the ADEA establishes prerequisites to a claimant's civil action. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27, 111 S. Ct. 1647, 1653 (1991). First, ADEA claimants must file a charge with the Equal Employment

---

[10]    *See, e.g., Circuit City Stores, Inc. v. Adams*, 121 S. Ct. 1302 (2001) (compelling arbitration of state court employment discrimination action); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S. Ct. 1647 (1991) (compelling arbitration of Age Discrimination in Employment Act of 1967 claim); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S. Ct. 1917 (1989) (compelling arbitration of Securities Act of 1933 claims, overruling *Wilko v. Swan*, 346 U.S. 427, 74 S. Ct. 182 (1953))*; McMahon*, 482 U.S. 220, 107 S. Ct. 2332 (1987) (compelling arbitration of Securities Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act claims).

16

Opportunity Commission (EEOC). *Id*. The ADEA also requires the EEOC to "attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance . . . through informal methods of conciliation, conference, and persuasion" before bringing an action. *Gilmer*, 500 U.S. at 27, 111 S. Ct. at 1653 (quoting 29 U.S.C. § 626(b)). This aspect of the ADEA is not unlike that portion of § 2310 which announces a "policy to encourage warrantors to establish [informal dispute settlement] procedures whereby consumer disputes are fairly and expeditiously settled," 15 U.S.C. § 2310(a)(1), and which obligates Magnuson-Moss claimants to first give warrantors an opportunity to cure. *Id*. § 2310(e). In *Gilmer*, however, the Supreme Court held that ADEA claims are arbitrable, in spite of the presence of an alternative settlement mechanism within the statute. This indicates that the presence of one type of non-judicial mechanism in the text does not necessarily preclude the possibility of all alternative mechanisms.[11] *See Southern Energy Homes, Inc. v. Lee*, 732 So.2d 994, 1007 (Ala. 1999) (See, J. dissenting).

However, while we are inclined to think that the presence of the non-binding § 2310 mechanism in the statutory text does not in and of itself mandate the conclusion that Magnuson-Moss renders binding arbitration agreements

_____

[11] Of course, there are discernible differences, both in the language and structure of the Magnuson-Moss Warranty Act and the ADEA. *See* 15 U.S.C. § 2301, *et seq*.; 29 U.S.C. § 621, *et seq*.

17

unenforceable, other key provisions of Magnuson-Moss, together with § 2310, cast considerable doubt on the propriety of the particular arrangement at issue here. These provisions include the requirements that significant conditions, limitations, and terms of the warranty be included in simple language in the warranty itself, and that the warranty must consist of a single, understandable document made available prior to sale to the consumer.

2.    Section 2302: the Disclosure Requirements

Magnuson-Moss provides rules governing the content of warranties "[i]n order to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products."   15 U.S.C. § 2302(a).  The Act requires that any warrantor that chooses to provide a written warranty with a consumer product "shall . . . fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty." *Id*.  The Act suggests the inclusion of thirteen items, among them: "[a] statement of what the warrantor will do in the event of a defect, malfunction, or failure to conform with [the] written warranty–at whose expense–and for what period of time," *id*. § 2302(a)(4); "[a] statement of what the consumer must do and expenses he must bear," *id*. § 2302(a)(5); "[e]xceptions and exclusions from the terms of the warranty," *id*. § 2302(a)(6); "[t]he step-by-step procedure which the consumer should take in order to obtain performance of any obligation under the warranty," *id*. § 2302(a)(7); "[i]nformation respecting the availability of any informal dispute settlement procedure offered by the warrantor and a recital, where the warranty so provides, that the purchaser may be required to resort to such procedures before pursuing any legal remedies in the courts," *id*. § 2302(a)(8); and "[t]he elements of the warranty in words or phrases which would not mislead a reasonable, average

19

consumer as to the nature or scope of the warranty." *Id*. § 2302(a)(13). Magnuson-Moss delegates promulgation of specific disclosure requirements to the FTC, but requires that the terms of any written warranty be made available to the consumer or prospective consumer prior to sale. *Id*. § 2302(a), (b)(1)(A).

The disclosure requirements established by the FTC pursuant to Magnuson-Moss are codified at 16 C.F.R. § 701.3, and obligate warrantors to "clearly and conspicuously disclose [warranty terms] in a single document in simple and readily understood language." 16 C.F.R. § 701.3(a). Among these mandatory items, nondisclosure of which is a violation of both Magnuson-Moss and the Federal Trade Commission Act as an unfair or deceptive act or practice,[12] 15 U.S.C. §§ 45(a)(1), 2310(b), the FTC includes: "[a] statement of what the warrantor will do in the event of a defect, malfunction or failure to conform with the written warranty . . . " 16 C.F.R. § 701.3(a)(3); "[a] step-by step explanation of the procedure which the consumer should follow in order to obtain performance of any warranty obligation . . ." *id*. § 701.3(a)(5); and "[i]nformation respecting the availability of any informal dispute settlement mechanism . . . ." *Id*. § 701.3(a)(6). This last requirement is echoed

---

[12]     For purposes of an FTC-instituted action, a warranty is deceptive if it "contains an affirmation, promise, description, or representation which is either false or fraudulent, or which, in light of all of the circumstances, would mislead a reasonable individual exercising due care; or [if the warranty] fails to contain information which is necessary in light of all of the circumstances, to make the warranty not misleading to a reasonable individual exercising due care . . . ." 15 U.S.C. § 2310(c)(2).

20

in § 703.2, which requires the warrantor to disclose "clearly and conspicuously at least the following information on the face of the written warranty: . . . [a] statement of the availability of the informal dispute settlement mechanism." *Id*. § 703.2(b)(1).

The comprehensive disclosure requirements of Magnuson-Moss are an integral, if not the central, feature of the Act, perhaps eclipsing even the civil action and informal dispute resolution mechanisms in their importance to consumers. CURTIS R. REITZ, CONSUMER PROTECTION UNDER THE MAGNUSON-MOSS WARRANTY ACT 31 (1978). Prior to the passage of Magnuson-Moss, consumers had been inundated with problems concerning the complexity of warranties, complexity generated by the presence of misleading terms and incomplete disclosure on the part of warrantors. *See* 40 Fed. Reg. 60,168, 60,168 (Dec. 31, 1975). Magnuson-Moss's enactors anticipated that "[o]ne of the most important effects of this bill [would] be its ability to relieve consumer frustration by promoting understanding." *Id*. (citing 119 CONG. REC. 972 (1973) (remarks of Congressman Moss)); *see also* H.R. REP. NO. 93-1107, at 1 (1974) reprinted in 1974 U.S.S.C.A.N. 7702, 7702 (stating "[t]he purpose of this legislation is (1) to make warranties on consumer products more readily understood and enforceable").

Congress sought to remedy the situation by requiring that material terms be presented in clear language in a single document. The FTC, instructed to implement

21

Congress's solutions to the perceived problems, crafted the disclosure requirements

so that they might "inform the consumer of the full extent of his or her obligations

under the warranty, and to eliminate confusion as to the necessary steps which he or

she must take in order to get warranty performance." 40 Fed. Reg. 60,168, 60,175

(Dec. 31, 1975). The single document rule reinforces these concerns by requiring

warrantors to present all information relevant to the warranty in one place, where it

might be easily located and assimilated by the consumer. *Id*. at 60,172. Significantly,

the FTC, bringing its regulatory experience to the task, recognized that the omission

of relevant terms[13] was as likely to foster erroneous assumptions as inclusion of

misleading terms,

---

[13]     Magnuson-Moss's treatment of informal dispute resolution mechanism clauses in warranties is consistent with general contract law, in that arbitration clauses, like other kinds of forum selection clauses, are generally considered material terms under state law variants of the Uniform Commercial Code. *See Coastal Indus., Inc. v. Automatic Steam Prods. Corp.*, 654 F.2d 375 (5th Cir. 1981) (finding unilateral insertion of arbitration clause per se alteration of the contract under state law); *General Instrument Corp. v. Tie Mfg., Inc.*, 517 F. Supp. 1231, 1234 (S.D.N.Y. 1981) (finding forum selection clause materially alters contract for Connecticut corporation); *Lorbrook Corp. v. G & T Industries, Inc.*, 562 N.Y.S.2d 978, 980 (1990) (discussing addition of forum selection term as material alteration to prior agreement); *see also* Michael A. Stiegal & Debra J. Williams, *The Battle of the Forms: UCC Section 2-207*, *in* PLI COMMERCIAL LAW & PRACTICE COURSE HANDBOOK SERIES ORDER NO. A4-4297 at 6 (1990) (stating that "[i]t is generally recognized that a 'forum selection' clause 'materially alters' a contract within the meaning of U.C.C. § 2-207").

because "the failure to disclose all conditions, limitations, and exclusions as to product warranties renders any affirmative claims about warranties deceptive."[14] *Id.* at 60,170.

Our preceding analysis commands the conclusion that Fleetwood's use of its third-party beneficiary status under the Ronnie Smith's–Cunningham agreement to compel arbitration where Fleetwood has failed to disclose in the warranty a term or clause requiring the Cunninghams to utilize an informal dispute resolution mechanism contravenes the text, legislative history, and purpose of the Magnuson-Moss Warranty Act. Fleetwood contends that neither Magnuson-Moss nor the rules promulgated by the FTC pursuant to Magnuson-Moss apply to agreements that are not incorporated into the terms of the written warranty, like the arbitration agreement here. Whether Fleetwood is correct in this contention or not, Magnuson-Moss and the rules do apply to the content of written warranties, including omissions, and Fleetwood can not "do by [the] surrogate or vicarious means" of the Ronnie Smith's–Cunningham arbitration agreement what Magnuson-Moss requires that it do directly: disclose in a single document all relevant terms of the warranty. *See Wilson v. Waverlee Homes, Inc.*, 954 F. Supp. 1530, 1539 (M.D. Ala. 1997). Compelling arbitration on the basis of an

---

[14]    The FTC explains further that "absolute silence on a material fact may be deceptive where the public assumes from this silence that a state of facts exists when, in fact, affirmative disclosure would reveal that these assumptions are unfounded. In such instances, the consumer's normal and reasonably foreseeable expectations are exploited, and a false or misleading impression is created." 40 Fed. Reg. 60,168, 60,170 (Dec. 31, 1975).

arbitration agreement that is not referenced in the warranty presents an inherent conflict with the Act's purpose of providing clear and concise warranties to consumers.

Supreme Court decisions regarding the arbitrability of claims brought under the Securities Act of 1933 and the Securities Exchange Act of 1934, which also contain mandatory disclosure requirements, support our conclusion. *Rodriguez de Quijas*, 490 U.S. at 485-86, 109 S. Ct. at 1922 (Securities Act of 1933); *McMahon*, 482 U.S. at 238, 107 S. Ct. at 2343 (Securities Exchange Act of 1934). In *McMahon* the Supreme Court examined a provision of the Securities Exchange Act that declared void "any provision waiving compliance with any provision of [the Act]." *McMahon*, 482 U.S. at 227-28, 107 S. Ct. at 2338 (quoting 15 U.S.C. § 78cc(a)). The respondents argued that this section forbade waiver of 15 U.S.C. § 78aa, which creates exclusive jurisdiction for federal district courts, and that therefore the waiver of a judicial forum in the arbitration agreement was unenforceable. The key to the Court's analysis lies in its conclusion that § 78cc(a) only forbade waiver of "the substantive obligations imposed by the Exchange Act," and that because the jurisdictional provision of § 78aa "does not impose any statutory duties, its waiver does not constitute a waiver" of a substantive obligation. *Id.*, 482 U.S. at 228, 107 S. Ct. at 2338. For this reason, selection of an arbitral forum would not prevent enforcement of the statutory rights

24

created by the Securities Exchange Act. *Id*. Similarly, in *Rodriguez de Quijas*, the Supreme Court distinguished between substantive and procedural provisions of the Securities Act, and declined to extend the scope of a no-waiver provision to encompass the latter class. *Rodriguez de Quijas*, 490 U.S. at 481-82, 109 S. Ct. 1920-21.

Unlike the procedural provisions of *McMahon* and *Rodriguez de Quijas*, § 2302 of Magnuson-Moss and the rules promulgated by the FCC that Fleetwood seeks to avoid do in fact impose substantive obligations on manufacturers that choose to issue warranties, requiring clear disclosure of warranty terms in a single document. The substantive obligation must be met at the time the consumer receives the warranty in order to effectuate the concerns of Magnuson-Moss, and permitting warrantors to compel arbitration through a third party contractual arrangement that allows them to evade the substantive obligations imposed by the Act eviscerates Magnuson-Moss's core provisions.

It is clear from our earlier discussion that the Congressional purposes of avoiding consumer misinformation and deceptive practices are effectuated where warrantors adhere to the requirements of Magnuson-Moss. Additional goals are also furthered in that adherence to uniform standards will foster Congress's purpose of "improv[ing] competition in the marketing of consumer products." 15 U.S.C.

§ 2302(a). As the FTC has noted, the "requirement of minimum uniformity in warranty disclosures should enable consumers to make valid and informed comparisons of warranties for similar products." 40 Fed. Reg. 60,168, 60,170 (Dec. 31, 1975). Allowing Fleetwood to condition the warranty by invoking an arbitration agreement executed by the buyer and seller confounds this purpose in that consumers confronted with warranties that do not contain arbitration clauses that are nonetheless subject to arbitration will have no basis for judging the suitability of a warranty. This is of particular concern because the warranty is issued unilaterally, and, as the enactors of Magnuson-Moss noted, a consumer cannot bargain with manufacturers to adjust the terms of a warranty offered voluntarily by the manufacturer: "[t]he warranty provisions of [Magnuson-Moss] are not only designed to make warranties understandable to consumers, but to redress the ill effects resulting from the imbalance which presently exists in the relative bargaining power of consumers and suppliers of consumer products." *Id*. at 60,168 (quoting S. REP. NO. 93-151 (1973)). The unilateral nature of warranties by manufacturers makes full disclosure in a single document mandatory for the attainment of Congress's goals.

## VII. CONCLUSION

Because of the unique nature of the contractual arrangement at issue here, it is important that we describe what is and what is not decided on this appeal. First, the

26

propriety of Ronnie Smith's and the Cunninghams agreement to arbitrate – the seller and buyer agreement – is not before us. We are not required to and do not decide whether Magnuson-Moss makes arbitration agreements unenforceable as to all Magnuson-Moss claims.[15] Nor is it necessary for us to determine whether warrantors may include binding arbitration provisions in the warranty itself. The only issue we are presented with here, and thus decide, is whether Fleetwood can utilize its third-party beneficiary status under the Ronnie Smith's-Cunningham arbitration agreement to compel binding arbitration of the Cunninghams' breach of written or express warranty claims against Fleetwood when there is no reference to binding arbitration in the warranty. Because we conclude that Fleetwood's failure to disclose in the warranty a term or clause requiring the Cunninghams to utilize an informal dispute resolution mechanism runs afoul of the disclosure requirements of the Magnuson-Moss Warranty Act, we affirm the district court's order declining to compel arbitration of the written or express warranty claims.

AFFIRMED.

---

[15] We also note, and the Cunninghams concede, that warrantors and consumers may agree to binding arbitration after a dispute has arisen between them. The Commission stated shortly after passage of the Act that nothing in Magnuson-Moss prevents warrantors from offering binding arbitration options to consumers after non-binding informal dispute settlement mechanisms have been completed. 40 Fed. Reg. 60,168, 60,211 (1975). More recently the FTC has reiterated that warrantors are not precluded from offering consumers a binding arbitration option after a warranty dispute has arisen. 60 Fed. Reg. 19,700, 19,708 (1999).

27