

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-8-2002

# CEGG Inc v. Magic Software Entr

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-1036

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"CEGG Inc v. Magic Software Entr" (2002). *2002 Decisions.* Paper 641.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/641

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-1036

———————

CECG, INC., a corporation of the
State of New Jersey,

                                   Appellant

                    v.

MAGIC SOFTWARE ENTERPRISES, INC. and
MAGIC SOFTWARE ENTERPRISES, LTD.

———————

On Appeal from the United States District Court
for the District of New Jersey
(Civil Action No. 00-cv-02262)
District Judge: Judge Harold A. Ackerman

———————

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2002

———————

Before: BARRY, AMBRO and GARTH, Circuit Judges

(Opinion Filed: October 8, 2002)

———————

OPINION

———————

GARTH, <u>Circuit</u> <u>Judge</u>:

In this contractual dispute, Plaintiff-Appellant CECG, Inc., appeals the district court's grant of summary judgment to Defendant-Appellees Magic Software Enterprises, Inc. and Magic Software Enterprises, Ltd.

We will affirm the district court's judgment.

## I.

Because we write solely for the benefit of the parties, we recount the facts and the procedural history of the case only as they are relevant to the following discussion.

This case involves a contractual dispute over the sale and licensing of Magic, a computer software program that can be used to develop other software. Appellees Magic Software Enterprises, Ltd. and Magic Software Enterprises, Inc. (hereinafter referred to collectively as "MSE") are, respectively, an Israel-based software company and its California subsidiary, which sells Magic software in the United States.

The parties have had a prior round of litigation. In 1988, CECG made its first purchase of Magic software. Magic software has two components: (1) a development "engine" that allows computer programmers to develop software; and (2) a "runtime module" that allows users of software developed through Magic's engine to operate that software. CECG claimed that when it purchased its first Magic development engine and purchased an accompanying single-user runtime module, the MSE software salesperson made an oral promise to provide a free runtime module upgrade every time that CECG

-2-

purchased an upgrade of the development engine.  Later, when MSE stopped offering

unlimited runtime modules in the United States, CECG sued MSE in federal court to

enforce its claim that MSE was obligated to continue to provide CECG with free unlimited

runtime module upgrades.  The district court entered summary judgment for MSE on the

basis that the Statute of Frauds required such a promise to be in writing to be enforceable.

*CECG, Inc. v. Magic Software Enterprises*, No. 95-800 (JCL) (D. N.J. Sept. 13, 1996), at

10-11.

In September 1999, CECG asked MSE to upgrade its development engine to the

most recent version of Magic software.  CECG's president, Mitch Geier, requested a copy

of the license agreement as well as a demonstration or evaluation copy of the software.

The Magic software license agreement sent to Geier along with the demonstration

copy contained limitations on use, allowing the purchaser to

> [u]se the Product as licensed with respect to number of users.  The Product is
> packaged in a manner to provide a specific number of users per package.  If
> several persons use this Product at the same time or if one person uses it on
> more than one computer, you must pay one license fee for each copy being
> used.  This includes use on a computer network.  You must pay a license fee
> for the number of users specified in the Product package.  You may not use
> the Product for more than the specified number of users.  In case you have
> any questions regarding the number of users permitted you should
> immediately contact MSE.

Magic License Agreement, Def.-Appellee's App. 11.  There was no mention of an unlimited

runtime license in the license agreement.  The agreement also provided that

"MSE may from time to time revise or update its Products.  Such updates and revisions will

be supplied only to registered users and according to MSE's then prevailing update and

support policies. MSE is not obligated to make any Product revisions or to supply them."
*Id*. at 12.

The Magic license agreement contained a forum selection clause as well.[1] Additionally, the agreement contained a complete merger clause. *Id*. The license agreement provided for its own acceptance if the software package is opened: "OPENING THIS PACKAGE CONSTITUTES YOUR ACCEPTANCE OF THE LICENSE AGREEMENT SET FORTH BELOW." *Id*. at 11.

After receiving the evaluation software and license, Geier said that he did not accept the terms of the license agreement. After the evaluation period ended, Geier decided he wished to purchase the new version of the development engine. Geier recalls speaking with MSE and telling the salesperson that there had been prior litigation between CECG and MSE; and that though he wanted to purchase the software, he would not do so on the terms of MSE's license agreement. He told the salesperson that he would not provide a credit card, but instead would send in a purchase order with modified terms and conditions. *See* Appellant's Br. at 10; Appellee's Br. at 15.[2]

Geier then sent a purchase order to MSE along with a check. On its face, the

---

[1] The license agreement provides: "You acknowledge that any action or suit brought to enforce any right or remedy of this Agreement shall be subject to the exclusive jurisdiction and venue of the California State or Federal Courts sitting in Orange County, California." Magic License Agreement, Def.-Appellee's App. 12.

[2] The salesperson does not recall any discussion with Geier relating to prior litigation or the unlimited runtime license. *See* Appellee's Br. at 13 n. 3. She does apparently recall asking for a credit card number. *See* Appellant's Br. at 10 (citing Urschel Dep. Tr. at 25, 3 Pl.-Appellant's App. 372).

purchase order listed a "Development Universal Client Server" ($3600) and "Technical

support contract including updates as well as contract pricing for upgrades" at a price of

$880 for one year. CECG Purchase Order, Def.-Appellee's App. 22. At the bottom of the

front side of the purchase order, the order stated: "P.O. Number Must Be Referenced On

Each Package, Packing Slip, Invoice, And/Or Any Correspondence. Please Enter Our Order

for the Goods Described Herein, Subject to the Terms and Provisions Set Forth on the Face

and Reverse Side of this Purchase Order." *Id*. The reverse side of the order contained

several terms. The key provision at issue, relating to the unlimited runtime license, is

contained within a paragraph with the caption "Intellectual Property Rights":

> This order shall also reinstate the buyer[']s understanding of the unlimited
> run time license. The seller shall update and upgrade the unlimited runtime
> license currently called deployment without charge to the buyer whenever the
> buyer upgrades or updates the development tools or program generator to any
> version or renamed product so that the licensed versions and names shall
> match. . . . This reinstatement is irrevocable.

CECG Purchase Order ¶ 4, Def.-Appellee's App. 23. The purchase order contained its own

forum-selection clause.[3] The purchase order provided for its own acceptance and provided

that it was the exclusive agreement between the parties.[4]

---

[3] The forum-selection clause in the purchase order states: "This Purchase Order and
the acceptance of it shall, as provided herein, constitute a contract made in, and to be
governed in all respects by the laws of the state of New Jersey. Venue shall be in
Middlesex County, NJ." CECG Purchase Order ¶ 8, Def.-Appellee's App. 23.

[4] The purchase order provided:

Commencement of performance pursuant to this Purchase Order constitutes
acceptance hereof by Seller. If specified delivery dates cannot be met, Seller
shall notify Buyer promptly of Seller's best alternative. The terms of this

MSE received the purchase order and deposited CECG's check.  MSE then shipped a CD-ROM containing the program, along with another copy of the license agreement.  CECG communicated with MSE to explain that it only required the "Product Authorization Key" (the codes) necessary to unlock the evaluation software for use.  MSE faxed a Product Authorization Key to CECG, which stated that

> The PAK is an integral part of licensed software product identified on the front of this document . . . and is provided subject to the licence [sic] terms applicable to the software.  Licensee shall maintain the PAK as confidential, and not transfer, disclose, or otherwise make it available to any third party.  Any copies of the PAK must be limited to internal use by licensee only.

Def.-Appellee's App. 29.  After CECG found that its old runtime module was incompatible with the new version of Magic's development engine, Geier again communicated with MSE in an attempt to obtain an unlimited runtime license in the belief that the contract obligated MSE to provide such a license.

According to Geier's notes, Russell Taitz, the vice president of operations for MSE, told Geier that MSE would not honor the purchase order, but would be willing to refund CECG the purchase price.  Def-Appellee's App. 31.

---

> Purchase Order may not be modified, superseded or amended except in a writing signed by an authorized representative of Buyer.  Each shipment received by Buyer shall only be upon the terms of this Purchase Order, notwithstanding any terms contained in any quotation, acknowledgment, license agreement, invoice or other form of Seller, or Buyer's acceptance of, or payment for, any shipment or any other act.

*Id.* ¶ 1.

CECG filed a complaint in the Superior Court of New Jersey, Middlesex County, on April 7, 2000, alleging breach of contract and seeking damages and specific performance. MSE removed the case to federal district court for the District of New Jersey on the basis of diversity jurisdiction. CECG filed a motion for remand to state court. The district court denied the motion, holding that there was diversity jurisdiction because the parties were diverse and the amount-in-controversy requirement was met; and that the venue provisions contained in CECG's Purchase Order and the Magic License Agreement negated one another pursuant to § 2-207 of the Uniform Commercial Code, as adopted by New Jersey. *CECG, Inc. v. Magic Software Enterprises*, No. 00-2262 (HAA) (D. N.J. Feb. 26, 2001), at 5-7, 8-11.

Following discovery, MSE filed a motion for summary judgment, and CECG filed a cross-motion for summary judgment and a motion for reconsideration of the district court's denial of remand to state court.

The district court denied CECG's motions and granted MSE's motion for summary judgment. The district court granted summary judgment for MSE on the contract claims, finding that the terms of MSE's license agreement and CECG's subsequent purchase order conflicted with one another with respect to whether MSE was obligated to provide CECG with an unlimited runtime license, and that, because the purchase order's term concerning the unlimited runtime license was "a material alteration of the contract," accordingly, under UCC § 2-207, "the contradictory term falls out of the parties' agreement." *CECG, Inc. v. Magic Software Enterprises*, No. 00-CV-2262 (HAA) (D. N.J. Dec. 11, 2001), at 18

(citing N.J. Stat. Ann. § 12A:2-207).[5]

This timely appeal followed.

**II.**

We have jurisdiction to hear this appeal of the district court's final judgment in this diversity action pursuant to 28 U.S.C. § 1291. We have plenary review of a district court's order granting summary judgment. *See, e.g.*, *Carter v. McGrady*, 292 F.3d 152, 157 (3d Cir. 2002). Accordingly, we apply those standards that the district court should have applied below. *Chisolm v. McManimon*, 275 F.3d 315, 321 (3d Cir. 2001). Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The parties do not dispute the contents of the writings that the parties have exchanged; rather, they disagree on the documents' legal effect. There are therefore no

---

[5] The district court also granted summary judgment to MSE on CECG's claim under the New Jersey consumer fraud statute, N.J. Stat. Ann. § 56:8-2, concluding that "CECG provides no evidence of deception" that would suffice to "establish that MSE engaged in any acts of fraud, unconscionable commercial practice, deception or false promises." *Id.* at 20. In addition, the district court denied CECG's motion for reconsideration of its earlier denial of CECG's motion for remand.

genuine issues of material fact; the only question before us is which party is entitled to

judgment as a matter of law.

Section 2-207 of the Uniform Commercial Code governs the transaction between

CECG and MSE.[6]  In *Step-Saver Data Systems, Inc. v. Wyse Technology*, 939 F.2d 91 (3d

Cir. 1991), a case which both parties cite as controlling, we analyzed the effect of

contradictory documents relating to the sale of software: the buyer's telephone order

(followed by a purchase order) and the seller's software box-top license.  *See id.* at 95-96.

We held that UCC § 2-207 governed the transaction, stating that "[i]n the absence of a

party's express assent to the additional or different terms of the writing, section 2-207

---

[6] UCC § 2-207 provides:

(1) A definite and seasonable expression of acceptance or a written
confirmation which is sent within a reasonable time operates as an
acceptance even though it states terms additional to or different from those
offered or agreed upon, unless acceptance is expressly made conditional on
assent to the additional or different terms.
(2) The additional terms are to be construed as proposals for addition to the
contract. Between merchants such terms become part of the contract unless:
   (a)  the offer expressly limits acceptance to the terms of the offer;
   (b)  they materially alter it; or
   (c)  notification of objection to them has already been given or is given within
a reasonable time after notice of them is received.
(3) Conduct by both parties which recognizes the existence of a contract is
sufficient to establish a contract for sale although the writings of the parties
do not otherwise establish a contract. In such case the terms of the particular
contract consist of those terms on which the writings of the parties agree,
together with any supplementary terms incorporated under any other
provisions of this Act.

N.J. Stat. Ann. § 12A: 2-207.

provides a default rule that the parties intended, as the terms of their agreement, those terms to which both parties have agreed," with any gaps to be filled by the UCC's provisions. *Id*. at 99 (footnote omitted).

Similarly, in the dispute between CECG and MSE, the initial license agreement sent by MSE along with the evaluation copy of the software became effective when CECG obtained and installed the software. When CECG submitted its purchase order and check to buy Magic software, CECG had objectively manifested its acceptance of the terms of the license agreement. To the extent that the reverse side of the purchase order contained additional or different terms, such terms, if they constituted material alterations of the contract, would drop out of the contract formed, unless CECG's purchase order indicated that "acceptance is expressly made conditional on assent to the additional or different terms." UCC § 2-207(1). The purchase order did not so indicate.[7] The provision on the reverse side of CECG's purchase order that allowed for CECG to receive a unlimited runtime license at no additional cost for each purchase of a new version of Magic's development engine constituted a material alteration of the contract and therefore did not

---

[7] Even if acceptance were expressly conditional on assent to these terms, and thus there were no written contract, the conduct of the parties established a contractual relationship. UCC § 2-207(3) provides that the conduct of both parties can establish a contract, and that, to the extent that there is no agreement, the UCC fills any gaps in the contract. Both parties clearly conducted themselves in a manner that reflected that there was a contractual relationship; the disagreement is as to what the terms of the contract are. The writings of the parties, however, do not agree on whether MSE is obligated to provide CECG with an unlimited runtime license, and there is no provision of the UCC that would allow for CECG to receive an unlimited runtime license.

become part of the contract.

Accordingly, we will affirm the district court's grant of summary judgment to MSE on CECG's contract claims. We also will affirm the district court's grant of summary judgment to MSE on the consumer fraud claim, as CECG has not made any argument of substance on appeal that the district court erred.[8]

## III.

Plaintiff also appears to appeal the district court's denial of remand.[9] We have plenary review over a district court's denial of remand. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 665 (3d Cir. 2002).

CECG argues that the district court erroneously deleted the conflicting terms as it viewed the forum-selection provisions in CECG's purchase order and in MSE's license agreement as conflicting terms under UCC § 2-207. *See* Appellant's Br. at 16-17.

Forum selection clauses are material terms to a contract. *See, e.g.*, *Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611, 621 n. 13 (11th Cir. 2001) ("arbitration

---

[8] CECG makes only the conclusory statement that "[t]he sale of the merchandise by defendant and its subsequent conduct entitles the plaintiff to its day in court on the issue of Consumer Fraud." Appellant's Br. at 34. Without anything more, we will not upset the determination of the District Court.

[9] The district court denied plaintiff's motion for remand. Plaintiff moved for reconsideration, which was denied. CECG requests remand as a possible form of relief. *See* Appellant's Br. at 38-39. It is not clear, however, whether plaintiff appeals the denial of its motion for reconsideration or the denial of its motion for remand. We will assume the latter.

clauses, like other kinds of forum selection clauses, are generally considered material terms under state law variants of the Uniform Commercial Code."). Based on our analysis of the conflicting writings, then, UCC § 2-207 requires that the conflicting term in CECG's purchase order either must give way to MSE's forum-selection clause, or must drop out because of the conflict between MSE and CECG's writings. *See* UCC 2-207(3).

Accordingly, there is no basis for remanding the case to New Jersey state court. We will affirm the district court's denial of CECG's motion for remand.

## IV.

For the foregoing reasons, the judgment of the district court will be AFFIRMED.

TO THE CLERK:

Please file the foregoing opinion.

_____/s/ Leonard I. Garth_____
Circuit Judge

-12-

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-1036

_____

CECG, INC., a corporation of the
State of New Jersey,

Appellant

v.

MAGIC SOFTWARE ENTERPRISES, INC. and
MAGIC SOFTWARE ENTERPRISES, LTD.

_____

On Appeal from the United States District Court
for the District of New Jersey
(Civil Action No. 00-cv-02262)
District Judge: Judge Harold A. Ackerman

_____

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2002

_____

Before: BARRY, AMBRO and GARTH, Circuit Judges

_____

JUDGMENT

_____

This cause came on to be heard on the record before the District Court for the

District of New Jersey and was submitted pursuant to Third Circuit LAR 34.1(a) on

September 27, 2002.

On consideration whereof, IT IS NOW HERE ORDERED AND ADJUDGED by this Court that, the judgment of the said District Court dated December 11, 2001, be, and the same is hereby, AFFIRMED. Costs taxed against appellant. All of the above in accordance with the opinion of this Court.

ATTEST:

Acting Clerk

DATED: 8 October 20002